Harold E. PRITCHARD, Appellant,

v.

UNITED STATES of America,
Appellee.

Calvin POPEJOY, Appellant,

v.

UNITED STATES of America,
Appellee.

Robert MURRAY, Appellant,

v.

UNITED STATES of America,
Appellee.

Daniel ANGELINI, Appellant,

v.

UNITED STATES of Amercia,
Appellee.

Dale ESPICH, Appellant,

v.

UNITED STATES of America,
Appellee.

Ronald BORCHELT, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 18501–18506.

United States Court of Appeals
Eighth Circuit.

Dec. 19, 1967.

Theodore F. Schwartz, Clayton, Mo., for appellants and filed brief.

Stephen H. Gilmore, Asst. U. S. Atty., St. Louis, Mo., for appellee; Veryl L. Riddle, U. S. Atty., St. Louis, Mo., was on the brief.

Before VAN OOSTERHOUT, MATTHES and MEHAFFY, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

Defendants Pritchard, Popejoy, Murray, Angelini, Espich and Borchelt, hereinafter jointly referred to as defendants, have each appealed from their conviction by a jury and the resulting sentence on various counts of an indictment charging them with mail fraud in violation of 18 U.S.C.A. § 1341. Defendants named above, along with Leon Hauser and Porter E. Gordon, were jointly tried on a twenty-nine count mail fraud indictment. Counts 14 and 16 were dismissed by the court as to all defendants. Hauser and Gordon were acquitted upon all counts. Pritchard was convicted on each of the twenty-seven counts submitted. Defendants Murray, Angelini and Espich were each found guilty on Counts 1, 2, 5, 6, 7, 8, 9, 11, 12, 13, 15, 17, 18, 19, 20, 22, 23, 24, 25, 26, 27, 28 and 29, and acquitted on the remaining counts. Defendant Borchelt was convicted on all of the counts last set out and in addition was found guilty on Count 21, and was acquitted on Counts 3, 4 and 10.

Pritchard was sentenced to five years imprisonment on Count 1 and certain other counts, such sentences to be served concurrently, and in addition was sentenced to five years under the provisions of 18 U.S.C.A. § 4208(a) (2) on Count 2 and certain other counts consecutively to the Count 1 sentence, and was fined $1,000 on each of Counts 1, 26, 27, 28 and 29.

Murray was given concurrent sentences of thirty months upon all the counts upon which he was convicted, to be served pursuant to 18 U.S.C.A. § 4208(a) (2), and was fined $1,000 upon Count 1.

Angelini was sentenced to three years imprisonment on Count 1 and certain other counts to be served concurrently, and to three years under Count 2 and certain other counts, pursuant to 18 U.S.C.A. § 4208(a) (2), to run consecutively to the sentence on Count 1.

Espich was given concurrent sentences of three years under 18 U.S.C.A. § 4208 (a) (2) upon each count upon which he was convicted and sentenced to a fine of $500 on Count 1.

Borchelt was sentenced to four years imprisonment on Count 1 and certain other counts, to be served concurrently, and to four years under § 4208(a) (2) on Count 2, and certain other counts, to be served consecutively to the sentence imposed on Count 1. He was fined $1,000 on each of Counts 1 and 28 and $500 on Count 29.

Popejoy was given concurrent sentences upon all the counts upon which he was convicted of thirty months under 18 U.S.C.A. § 4208(a) (2) and fined $1,000 on Count 6. Costs were taxed to defendants jointly.

Chem-Plastics & Paint Corp. was incorporated in Missouri in 1962 with principal place of business in St. Louis. In 1965 such corporation was succeeded by National Chem-Plastics Corp., a Nevada corporation with principal place of business at Las Vegas. Operations were also continued in St. Louis. Both corporations were engaged in the sale of paint products, particularly Pylon products, a type of plastic coating. The indictment covers 1964 and 1965 transactions.

Defendant Pritchard was the principal owner and operator of both corporations. Pritchard made attempts to conceal his ownership of the Nevada corporation and sometimes used and signed the name "Hauser". Popejoy was president of the Nevada corporation from July to December 1965. Borchelt became manager at St. Louis in the fall of 1964 and has been general manager since July 1965. Defendants Angelini, Murray and Espich were primarily salesmen. Angelini bore the title of Vice President and there is evidence that Espich had the title Secretary.

The indictment charges and the evidence establishes that the defendants convicted entered into a scheme to defraud prospective purchasers of franchises to sell their product. Advertisements were placed in numerous newspapers and magazines with national circulation inviting inquiries with respect to profitable franchises. People answering the advertisements were usually sent descriptive literature and were invited to visit the plant at St. Louis or Las Vegas, where upon arrival they were usually put in touch with one or more of the defendants. The scheme consisted of false representations as to the financial strength of the company, false promises as to aid in establishing and training a sales organization, false promises of an exclusive territorial franchise, false statements as to copyright protection, and false statements as to profit possibilities. The victims, on the basis of representations made, were sold large quantities of paint in order to obtain their exclusive franchises. In nearly all instances the paint was delivered. There is some dispute about the quality of the paint but the Government has not based its case on misrepresentations of paint quality. False representations as to direct mailing and advertising aid are also charged.

The promises of sales assistance, although sought by the franchise purchas-

ers, were not carried out. The promises of exclusiveness of the franchise were in many instances violated. There is substantial evidence ·that the financial statements used to impress the victims of the corporation's financial stability were knowingly false. Many of the direct advertising reply cards received from prospective customers were not sent to the franchise holders in accordance with the promises made and in some instances were used by the defendants for making direct sales.

The defendants were tried together below and their appeals were consolidated here. All defendants are now represented by the same counsel. Angelini and Borchelt have filed separate briefs. The remaining defendants have filed a joint brief. The briefs filed differ with respect to facts relating to the participation or lack thereof on the part of the various defendants but all briefs raise the same errors for reversal, to wit:

I. Refusal to sustain motions of all defendants for judgment of acquittal on all grounds made at the close of all the evidence for the reason that the evidence was insufficient to sustain a conviction on any count.

II. Error in admitting testimony of statements made by salesmen, who were not defendants, to victims for the reason that such testimony is prejudicial hearsay and that there is no showing defendants authorized or ratified any acts or statements of such salesmen.

III. Prejudicial error in refusing to give defendants' requested instructions 1, 2, 3, and 4.

IV. Refusal to strike testimony of Charles Guess concerning financial status of corporation for the reason the books were not kept by Guess nor were they kept in the ordinary course of business.

V. Errors in admitting in evidence exhibits 102 and 109—two cancelled checks.

We have examined the asserted errors in the light of the record and find no prejudicial error has been committed and hence an affirmance is required. We shall discuss the asserted errors in the order in which they are set out above.

I.

■ All motions for acquittal were properly overruled. Under the familiar, well-established principles of appellate review, the evidence must be viewed in the light most favorable to the Government as the prevailing party before the jury, and the Government is entitled to the benefit of all reasonable inferences that may properly be drawn from the evidence. Friedman v. United States, 8 Cir., 347 F.2d 697, 706; Koolish v. United States, 8 Cir., 340 F.2d 513, 519.

As heretofore pointed out, each sentence of imprisonment is imposed on conviction upon many counts. With respect to all defendants except Popejoy, the imprisonment sentences are imposed on Count 1, with sentences imposed on certain other counts to run concurrently with the Count 1 sentences. Consecutive sentences of imprisonment are imposed only on defendants Pritchard, Angelini and Borchelt, such sentences being imposed on Count 2 convictions and concurrently imposed on other designated counts. Popejoy's imprisonment sentence is imposed on Count 6, with concurrent sentences on all other counts upon which he was convicted. Fines were imposed on the various defendants on specific counts as hereinabove stated.

■■ In order to support the convictions, it is not necessary to determine the sufficiency of the evidence to support the conviction on all counts. The burden is on the defendants to establish that the evidence is insufficient to support conviction upon any count upon which the sentence is concurrently imposed. In Isaacs v. United States, 8 Cir., 301 F.2d 706, 733, we state the law here pertinent as follows:

"Firmly embedded in federal jurispudence is the principle that a general sentence on several counts of an indictment will be sustained on appeal if the defendant was properly convicted under any count which is good

and which is sufficient in itself to support the judgment and sentence. Barenblatt v. United States, 360 U.S. 109, 115, 79 S.Ct. 1081, 3 L.Ed.2d 1115; Lawn v. United States, 355 U.S. 339, 359, 78 S.Ct. 311, 2 L.Ed.2d 321; Bunn v. United States, 8 Cir., 260 F.2d 313, 316; Guon v. United States, 8 Cir., 285 F.2d 140, 142."

The law with respect to mail fraud cases is well-established by our prior decisions. See Fabian v. United States, 8 Cir., 358 F.2d 187; Gold v. United States, 8 Cir., 350 F.2d 953; Koolish v. United States, 8 Cir., 340 F.2d 513; Isaacs v. United States, 8 Cir., 301 F.2d 706.

■ The essential elements of the mail fraud offense are (1) a scheme devised by or knowingly and intentionally participated in by defendants which is designed to defraud victims by false pretenses or representations knowingly or intentionally made by defendants or authorized or ratified by them, and (2) the use of the mails in furtherance of such scheme.

A fact issue on the use of the mails is clearly established. Many advertisements were inserted in newspapers and magazines having national circulation for the purpose of establishing contacts with prospective victims. Most of the leads which resulted in the transactions here in controversy came from responses of victims to such advertisements. Thus adequate basis exists for the inference that the use of the mails in circulating such advertising was a part of the scheme. See Atkinson v. United States, 8 Cir., 344 F.2d 97.

There is also evidence of direct mail correspondence by the various defendants and the victims. The letters referred to in many of the counts were written before the scheme was consummated. The mail correspondence with respect to some of the counts occurred after the victim had entered into a franchise and had paid his money, and upon such basis defendants claim that the use of the mails is not a part of the execution of the fraud. We do not deem it worth-while to review the extensive volume of correspondence affecting the various counts. Many of the letters written after the consummation of the transaction would appear to be lulling letters of the type described in Bliss v. United States, 8 Cir., 354 F.2d 456, 457. In any event, the foreseeable use of the mail in delivering the extensive newspaper and magazine advertisements, which occurred prior to the consummation of the transactions, affords sufficient proof of use of the mails.

There is substantial evidence that each of the convicted defendants worked for a common purpose for a considerable period of time; that each spent considerable time at the principal offices of the company at Las Vegas and St. Louis; that each assisted in closing deals, in some of which various defendants participated jointly; that representations made to victims were in all cases quite similar; that each defendant had full knowledge of the nature of the business; and an adequate basis exists for an inference that each defendant knowingly and intentionally participated in the fraudulent scheme.

In Isaacs v. United States, 8 Cir., 301 F.2d 706, 726, we reaffirmed our prior holding to the effect that:

"Where two or more persons jointly devise and execute a scheme to defraud by the use of the mails, they may thereby become in effect partners in the criminal purpose of so using the mails to defraud. If they do, the acts of each thereafter, during the existence and execution of the scheme, done in furtherance of that execution, may become the acts of all the partners, and each may be convicted of the mailing of a letter which one of his partners caused to be mailed in the execution of the scheme. Baker v. United States, 8 Cir., 115 F.2d 533, 540, cert. den. 312 U.S. 692, 61 S.Ct. 711, 85 L.Ed. 1128."

We shall briefly summarize the victims' evidence in support of Counts 1 and 2 upon which all prison sentences except that of Popejoy are primarily based.

Burkett, the Count 1 victim, residing in Portland, Oregon, first learned of defendants through an advertisement in the "Firm Foundation", an Austin, Texas, religious publication, which advertisement reads:

"EXCLUSIVE FRANCHISE Amazing new liquid plastic coating used on all types of surfaces interior or exterior. Eliminates waxing when applied on Asphalt Tile, Vinyl, Linoleum, Vinyl Asbestos, Hard Wood; and Furniture. Completely eliminates painting when applied to Wood, Metal, or Concrete surfaces. This finish is also recommended for boats and automobiles.

"NO COMPETITION As these are exclusive formulas in demand by all businesses, industry and homes. No franchise fee. Minimum investment —$300. Maximum investment—$7,000. Investment is secured by inventory. Factory trained personnel will help set up your business.

"For complete details and descriptive literature write: CHEM-PLASTICS & PAINT CORP., 1828 Locust, St. Louis 3, Missouri."

Burkett responded to the advertisement by letter and received a packet of brochures from defendants and a letter directing him to contact the Las Vegas office if interested after reading the material. He phoned such office and on the following day defendant Angelini visited him in Portland. Angelini represented as part of the deal that the company would send a representative to set up a training program and get the business off to a good start, and that Burkett would have an exclusive franchise for eight counties including Portland. He signed the tendered contract and paid $3,000. Thereafter, he saw an advertisement in the Portland paper by National Chem-Plastics for a salesman and upon investigation, found a Mr. Sawyer was selling Pylon in Portland. He complained by letter and Borchelt responded that Sawyer was operating a regional factory office and was there to help Burkett. None of Burkett's requests for the promised assistance, made either to Sawyer or the defendants, brought about any of the promised assistance. Sawyer stated that he was not there to help other distributors.

Fleming, the Count 2 victim, replied to defendants' business opportunity advertisement in the Denver Post. He responded by writing to the address given and received defendants' sales literature. Shortly thereafter, Angelini contacted him by telephone and invited him to St. Louis, and thereafter sent a telegram advising that the company would pay the expenses of the trip. He went to St. Louis with his wife and was given the sales pitch by Borchelt, including representations as to the profit potential, that Colorado was virgin territory, that the franchise was to be exclusive and that extensive aid would be given in recruiting and training a sales organization. No contract was then signed. Later Espich followed up with a visit to Denver and renewed the assurances, stating that he would immediately advertise for, interview and train salesmen and stay in Denver for a time to help set up the business. The contract was signed, $7,000 was paid by certified check, and Espich immediately disappeared. Subsequent pleas for the promised assistance brought no results. Fleming later learned that others had franchises to sell the product in the area. Efforts to sell the product met with very little success.

■ Hutson, of Gulf Breeze, Florida, the Count 6 victim, upon which count defendant Popejoy's imprisonment sentence was first imposed along with the fine, saw defendants' opportunity advertisement in a Birmingham, Alabama, newspaper. He replied and ultimately accepted an invitation to visit the St. Louis office of defendants. An exclusive Florida distribution franchise was discussed with Borchelt and several salesmen. The representations made were similar to those made in connection with Counts 1 and 2. Hutson testified that he was unconditionally promised travel expenses to St. Louis and that the same were never paid. A contract signed by Borchelt was submitted but

never signed and no franchise transaction with Hutson was consummated. Success of the fraudulent scheme is not an essential element of the mail fraud offense and the lack of success of the fraudulent scheme constitutes no defense. Atkinson v. United States, supra; Adjmi v. United States, 5 Cir., 346 F.2d 654, 657.

We have also examined the evidence in support of the convictions on Counts 26, 27, 28 and 29, upon which some of the fines are based, and find that the evidence in support of such counts is sufficient to support the conviction.

■ Inasmuch as the convictions upon the counts discussed support the prison sentences and fines imposed, we deem it unnecessary to give detailed consideration to any of the remaining counts. It appears to us that a substantial evidentiary basis exists to support the conviction upon all counts.

## II.

The trial court admitted in evidence, over defendants' objection, the testimony of the victims named in sixteen counts with respect to representations made to them by salesmen purporting to represent National Chem-Plastics. Such salesmen were not named as defendants. It is not charged in the indictment that they are participants in the alleged fraudulent scheme. Defendants vigorously urge that the statements made to the victims by such salesmen, out of the presence of the defendants, constitute inadmissible hearsay testimony. It seems quite clear that such testimony is hearsay and hence the real issue is whether such testimony falls within an exception to the hearsay rule.

We believe that there is adequate evidence to establish that National Chem-Plastics was used by the convicted defendants as a device through which they carried out a fraudulent scheme and that the salesmen making the representations were employed by such corporation for the purpose, among others, of selling franchises to sell Pylon. In Beck v. United States, 8 Cir., 33 F.2d 107, 112, we held:

"It must be true that no man can be held liable for a false pretense or promise if he neither made the pretense nor authorized it. It is doubtful as to whether the corporation could be held civilly for unauthorized and unratified promises of a salesman; it is more doubtful whether the president could be personally held; those questions need not be discussed, for the doctrine of respondeat superior that sometimes holds a principal for representations he neither authorized nor ratified, expressly or impliedly, is a doctrine of civil liability, and not of criminal responsibility. Material representations made by Barrett in the presence of Beck, or by others authorized by Beck to make them, are competent; evidence that *such* representations were used in securing money from contract holders is competent. But the trial proceeded on the theory stated by the court that any representation made by those employed by the company was competent, irrespective of Beck's knowledge, authority, or ratification; and this was error."

To like effect see Barrett v. United States, 8 Cir., 33 F.2d 115; Gold v. United States, 8 Cir., 36 F.2d 16.

In Beck v. United States, 10 Cir., 305 F.2d 595, the court considers in depth the problem here confronting us and cites and quotes from many cases, including Eighth Circuit cases, and then holds:

"It is agreed the general rule permits the admission of such statements, if they have been expressly or impliedly authorized, or have been ratified by the person against whom they are offered. Beck v. United States, supra; Barrett v. United States, supra; Gold v. United States, supra. We are cognizant of the difficulties encountered by the government in a fraud case, but safeguards for the defendant from the dangers of hearsay evidence cannot be disregarded. See Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790. The authority to render such statements admissible may be found in the

circumstances of the particular case, in the scope of the plan or scheme or from other pertinent facts. A proper foundation must always be laid." 305 F.2d 595, 600.

In Reistroffer v. United States, 8 Cir., 258 F.2d 379, 387, we said:

"Where the scheme to defraud included making sales by means of certain false representations conveyed through salesmen, proof of the same misrepresentations being made at widely different places to different persons by numerous agents in the same period, tends to prove that the scheme existed and that the particular salesman was carrying it on. As in the case of a conspiracy in operation the acts and declarations of each participant are admissible against all."

In Fabian v. United States, 8 Cir., 358 F.2d 187, 191, we again discussed the problem relating to the admissibility of salesmen's statements not made in the presence of the defendants and quoted and followed the rule adopted by the Tenth Circuit in *Beck,* supra, and affirmed the conviction. On the order of proof issue, we held:

"If that later proof shows, as it did here, that that defendants against whom the evidence is offered, did formulate and participate in a scheme to defraud, and the salesmen's statements were in furtherance of that scheme, then a proper foundation has been laid. The problem here is not unlike that which arises in conspiracy cases in which the declarations of an alleged conspirator are offered against an alleged co-conspirator, who was not present when the statements were uttered. In that type of case we have held it to be discretionary with the trial judge whether to admit the evidence subject to later proof of the existence of a conspiracy." 358 F.2d 187, 192.

■ We recognize that caution must be exercised by the trial court in the reception in evidence of statements of salesmen not made in the presence of the defendants and that proof of employment of the salesmen standing alone is an insufficient factor for admitting representations made by the salesmen to the victim. There must be some evidence to support a finding of authorization or ratification by the defendants of the statements made by the salesmen and whether there be such authorization or ratification will usually present a fact issue to be decided on a case-to-case basis.

■ Here, as in *Beck, Reistroffer* and *Fabian,* we find adequate circumstantial evidence to support a finding that the statements made by the salesmen were authorized or ratified by the defendants participating in the fraudulent scheme. The representations made by the salesmen were substantially similar to those made by the defendants in similar situations and followed the same pattern. The salesmen were frequently present when defendants made their sales pitches. Many of the representations were made by the salesmen in the St. Louis or Las Vegas office. On other occasions if an inquiry had been made by a prospect, the salesman was sent by the defendants to see the prospect and attempt to make the sale of a franchise. In a number of instances, the victims, after talking with a salesman, conferred with one or more of the defendants prior to entering into a contract and in such conversations, the representations made by the salesman were confirmed.

■ In any event, the negotiations with respect to many of the victims were handled directly by one or more of the defendants and the sentences imposed can be supported by convictions on counts in which there was no material participation of any nondefendant salesman. No prejudicial error was committed in the circumstances of this case in admitting the victims' testimony as to the salesmen's representations.

### III.

■ Defendants excepted to the court's failure to give their requested instructions numbered 1, 2, 3, and 4.

Numbers 1, 2 and 4 deal with the necessity of the Government proving criminal intent and state that defendants can not be punished for errors in judgment, mismanagement, or innocent mistakes, or for permissible puffing. The court refused numbers 1 and 2 for the reason that their contents were in substance incorporated in the instructions given, and refused number 4 for the same reason and the additional reason that it was improper in form and assumed facts not established by the evidence. Number 3 advised the jury that a not guilty verdict would not affect the right of any injured party to make a civil recovery. Such instruction was not relevant on any issue to be considered by the jury and was clearly improper.

■ Defendants did not except to the instruction given by the court on intent or point to any desired expansion of such instruction or assign any reason why the instruction given was not adequate or was defective. Thus, it seems that the requirement of Rule 30, Fed.R. Crim.P., to the effect that objections must be specific, has not been complied with and that the asserted error is not preserved for review. Dranow v. United States, 8 Cir., 307 F.2d 545, 569; Johnson v. United States, 8 Cir., 291 F.2d 150, 156.

■ We have examined the instructions given by the court and find that such instructions fairly cover the substance of the requested instructions on intent.

## IV.

■ Guess, who served the corporation as part time bookkeeper and accountant, testified that he prepared the general ledger from subsidiary ledgers of the company and that he prepared the June 30, 1965, balance sheet and profit and loss statements from the company books. The company books were in court but were not offered in evidence. Guess testified that after he had prepared such statements from the books, he substituted falsified figures in the balance sheet at the insistence of Pritchard, which made the company's financial position appear more favorable than it actually was. After Guess' cross-examination, defendants moved to strike Guess' testimony on the ground that Guess did not personally prepare all the books and records. The pertinent testimony relating to the use of false figures in the balance sheet went in without objection and the belated objection made by defendants did not reach such testimony. Additionally, we are satisfied that a proper foundation had been laid for the admissibility in evidence of the corporate books. See United States v. Re, 2 Cir., 336 F.2d 306, 313; Burger v. United States, 8 Cir., 262 F.2d 946, 954.

## V.

■ Defendants' claim of prejudicial error in the reception of exhibits 102 and 109 lacks merit. Exhibit 102 is a check relating to the Count 10 Seaman transaction. All defendants except Pritchard were acquitted on this count. The exhibit is a check given to and cashed by National Chem-Plastics for paint furnished by Seaman to Holiday Inns. Pritchard as a witness testified the check was retained because Seaman owed the company money. It would appear the check in controversy has little bearing upon the issues in this case. We are convinced that no prejudicial error resulted from its admission in evidence.

■ Exhibit 109 relates to the introduction of a $2,000 check given National Chem-Plastics on behalf of Hougen by his agent Tomczak in part payment of the franchise involved in Count 21. The hearsay objection to the check was made after testimony had been received that the check was given to cover the initial $2,000 payment. Such check appears to have been properly identified by the witnesses. In any event, any error in its reception can not be considered prejudicial. Moreover, the conviction on Count 21 is not essential to sustain any of the sentences imposed.

We find that defendants have had a fair trial and that the defendants have failed to establish any prejudicial error has been committed.

The judgments are affirmed.