Harris Calvin JACOBS, Appellant,

v.

UNITED STATES of America,
Appellee.

Burton S. WOLCOFF, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 18592, 18593.

United States Court of Appeals
Eighth Circuit.

May 21, 1968.

Sherman C. Magidson, Chicago, Ill., for appellants; Herbert Barsy, Chicago, Ill., on the briefs.

Jerry E. Williams, Asst. U. S. Atty., Des Moines, Iowa, for appellee; James P. Rielly, U. S. Atty., and Claude H. Freeman, Asst. U. S. Atty., Des Moines, Iowa, on the brief.

Before VOGEL, Senior Circuit Judge, and MATTHES and BLACKMUN, Circuit Judges.

VOGEL, Senior Circuit Judge.

Irwin J. Davis, alias Pinky Davis, alias Pinky Diamond, Burton S. Wolcoff, alias Bert Gold, Harris Calvin Jacobs and Alan Robert Rosenberg, alias George Wagner, were all indicted together, tried together and convicted by a jury verdict on one count of conspiracy to violate the bankruptcy laws, in violation of 18 U.S.C.A. § 371, and seven counts of mail fraud, in violation of 18 U.S.C.A. § 1341. Since the convictions and sentences Rosenberg has become deceased. Each of the remaining three was sentenced to concurrent five-year sentences on each of the counts and each was directed to pay one-fourth of the prosecution costs. In addition, Davis received a $10,000 fine, Wolcoff received a $5,000 fine and Jacobs received a $1,000 fine on the 18 U.S.C.A. § 371 violation. Following conviction and sentence, Davis, Wolcoff and Jacobs appealed. During the pendency thereof, Davis, the appellant in No. 18,571, asked that his appeal be dismissed and the mandate issue. His appeal was dismissed on March 12, 1968. We accordingly are concerned with appellant Jacobs in No. 18,592 and appellant Wolcoff in No. 18,593. References in this opinion to Davis and Rosenberg will be made only where necessary or pertinent. We affirm the judgment of conviction in both No. 18,592 and No. 18,593.

The appellants herein did not testify and they offered no testimony in their own behalf. That offered by the government, which was of course undisputed, indicated as follows: During the summer of 1963 the Robinson Wholesale Company was experiencing financial difficulties and the operating officer appointed by the bank to which it was indebted determined that one of the company's stores, which was located in Bettendorf, Iowa, should be sold. In mid-July, 1963, Goodman Robinson, the president of Robinson Wholesale Company, was introduced to the two appellants, Jacobs and Wolcoff. Wolcoff was introduced as "Bert Gold". Jacobs and Wolcoff were in Bettendorf, Iowa, to discuss the purchase of the Bettendorf store. Various terms of sale were discussed and Wolcoff concluded the con-

versation by telling Robinson that he would hear from them later. Approximately two weeks later Wolcoff arranged to meet Robinson at the store in Bettendorf. At this second conversation in Bettendorf, Irwin J. Davis was present and was introduced to Robinson as "Pinky Davis". Terms of sale were again discussed and in addition Mr. Robinson gave them the name of Mr. Seymour Gordon, whom the prospective purchasers could employ to manage the store for them.

In the last week in August 1963 Seymour Gordon, who had earlier discussed with Robinson the possibility of purchasing the store, flew to Bettendorf to meet with Jacobs and Wolcoff, after being informed by Robinson that he had suggested Gordon as a store manager for the prospective purchasers. Gordon met with Wolcoff and Jacobs at Robinson's store and discussed the possibility of his employment as general manager and buyer for the Harris Discount Store, which would be the successor to Robinson's store. On Labor Day weekend Gordon returned to Bettendorf and met Jacobs and Wolcoff at a motel. There he also met Davis, who this time was introduced to Gordon as "Pinky Diamond". The four men then discussed the terms of Gordon's employment, which included an agreement that Gordon would receive an additional percentage of the net if he would lend the appellants $5,000 for two or three weeks, which amount was the purchase price of the store. On September 9th Gordon returned with the $5,000 and on September 11, 1963, the sale of the store fixtures was consummated. Articles of Incorporation for the Harris Discount Center, Inc., had been filed with the Iowa Secretary of State on August 21st. By September 9th a form letter and a false credit reference and financial statement were drawn for the new corporation and an employee, Dorothy Walton, was hired to mail out over a thousand of these documents to addresses given to her by Wolcoff.

Two other employees were also hired as buyers for the store. They placed orders to manufacturers from catalogs the manufacturers sent to the store in response to the form letter, credit reference and financial statement. By September 23rd merchandise began coming into the store in some quantity while orders continued going out through salesmen who called at the store and through mail orders. The incoming merchandise would be piled in the rear of the store. As this rear area would fill up, the merchandise was removed from the store. The employees, upon arriving at the store in the morning, observed that merchandise which had nearly filled the receiving room the evening before had disappeared. When they asked the appellants about this, the employees would be told that the missing merchandise had been removed to a warehouse across the river and that it would be returned when the redecorating of the store was completed. Even after the redecorating was completed, however, merchandise continued disappearing from the store. The evidence indicated that both Jacobs and Wolcoff participated in removing the merchandise to places of business in Chicago, including a "Harris Discount Center" which Jacobs said he had in Chicago and that it had a warehouse to which he was sending the merchandise.

During the latter part of October Jacobs and Wolcoff left for California on a buying trip, and none of the four defendants was ever seen at the store again. In all, $117,876.26 worth of merchandise was delivered to the Harris Discount Store in Bettendorf. A total of $6,909.70 was paid to the suppliers of this merchandise and this total includes a $6,003.90 payment made to one of the suppliers.

On November 27, 1963, a petition in bankruptcy was filed against Harris Discount Center, Inc. The Trustee in Bankruptcy ultimately recovered $5,751.34 as proceeds of a sheriff's sale of the Harris Discount Store's assets, and an additional $100.00 from the sale of the store fixtures. All four defendants

were given notice of the bankruptcy proceedings, and while Rosenberg, Davis and Jacobs appeared at those proceedings, no additional recovery resulted from those appearances.

A grand jury in the Southern District of Iowa, Davenport Division, returned an indictment against the four defendants below on November 16, 1964. Count 1 of the indictment charged a conspiracy to violate the bankruptcy laws of the United States, in violation of 18 U.S.C.A. § 371. Count 2 charged a concealment of assets, in violation of 18 U.S.C.A. § 152. Counts 3 through 14 charged mail fraud, in violation of 18 U.S.C.A. § 1341. The four named defendants pleaded not guilty and the case was set for jury trial. Prior to trial leave was granted to the United States Attorney, on June 29, 1966, to dismiss Count 2 of the indictment. The trial commenced on August 2, 1966. Prior to submitting the case to the jury Counts 5, 6, 8, 10 and 14 were withdrawn from jury consideration. On August 16, 1966, the jury returned guilty verdicts as to each defendant on each of the remaining counts.

Judgments and sentences were entered on September 9, 1966, and the present appeals are taken by Jacobs and Wolcoff from these judgments of conviction.

Jacobs and Wolcoff have submitted their case on a joint brief. They make three claims of error as follows: (1) A fatal variance exists between the charges and proof and the charges of the indictment were not proven; (2) the defendants were prejudiced by the introduction of prejudicial and irrelevant matter; (3) the prosecutor's comment on the refusal of the defendants to testify and the court's acquiescence therein constituted error.

■ This being a jury case, and the verdict having been in favor of the government and against the appellants, we observe the general rule that the evidence must be viewed in a light most favorable to the government as the prevailing party. All reasonable inferences must be resolved as supporting the jury verdict. McClard v. United States, 8 Cir., 1967, 386 F.2d 495, 497; Lewis v. United States, 8 Cir., 1967, 382 F.2d 232, 235; McIntyre v. United States, 8 Cir., 1967, 380 F.2d 822, 825, cert. denied, 389 U.S. 992, 88 S.Ct. 493, 19 L. Ed.2d 487; Winel v. United States, 8 Cir., 1966, 365 F.2d 646, 647.

■■ It is not contested and it is readily apparent from the factual statement given supra that a conspiracy to violate the bankruptcy laws, as charged in the indictment, was formed. The jury could have found, as it undoubtedly did find, that Davis, Wolcoff, Jacobs and Rosenberg conspired together to purchase the Bettendorf store, paying for it with borrowed money which they had no intention of repaying and used that store as a front for the purchase of great quantities of merchandise for which they also had no intention of paying and which they intended to and did secret away from the Bettendorf store, disposing of it without using the money received therefor to pay their bills, allowing the Harris Discount Center, Inc., to be proceeded against in bankruptcy. The evidence shows direct participation by all four of those charged with conspiracy. Knowledge and participation are essential to a conviction of conspiracy and may be inferred from the circumstances, acts and conduct of the parties. Causey v. United States, 5 Cir., 1965, 352 F.2d 203, 207; United States v. Kensil, D.C.E.D.Pa., 1961, 195 F.Supp. 115, aff'd, 3 Cir., 1961, 295 F.2d 489. The questions of knowledge and participation are jury issues and here there was adequate substantial evidence to support the jury verdict on both these questions. Hayes v. United States, 8 Cir., 1964, 329 F.2d 209, 214; United States v. Kelly, 3 Cir., 1964, 329 F.2d 314, 315; Smith v. United States, 10 Cir., 1944, 145 F.2d 643, 646.

■ Appellants, in their joint brief, contend that proof of mailing as to certain of the mail fraud counts was insufficient and that there is a fatal variance

between the dates alleged in the counts and the proof of the mailing dates as adduced at trial. It is relevant to note that as to each of the seven mail fraud counts the appellants were convicted and concurrent sentences were imposed. The law is clear that if the appellants were properly convicted under any count upon which a concurrent sentence was imposed, that conviction is sufficient in itself to support the judgment and sentence. See, Lawn v. United States, 1958, 355 U.S. 339, 362, 78 S.Ct. 311, 2 L.Ed. 2d 321; Barenblatt v. United States, 1959, 360 U.S. 109, 115, 79 S.Ct. 1081, 3 L.Ed.2d 1115; Pritchard v. United States, 8 Cir., 1967, 386 F.2d 760, 763–764. Therefore, if we find that the proof of mailing as to any one of the mail fraud counts is sufficient, our inquiry in this regard is complete.

Dorothy Ann Walton was hired for the specific purpose of conducting the mailing of the form letters, false credit references and financial statements. She testified as to the manner in which she conducted mailings of over a thousand of these letters and documents. While there is testimony that salesmen calling at the store were also given copies of the credit references and financial statements, the record is barren of any evidence that they were also given a copy of the form letter.

■ Plaintiff's Exhibit 114 was the count document for Count 7. This exhibit is a purchase order from Harris Discount Center and a list of the false credit references which were sent to Charnoll Fashions of St. Paul, Minnesota. Mrs. Lorraine Otto, office manager for Charnoll, testified regarding Exhibit 114 as follows:

"Q. (By Mr. Williams) To whom did that exhibit come in your organization?

"A. It would come to me.

"Q. Did it come to you?

"A. Yes, it did.

"Q. Do you remember that?

"A. I remember it distinctly.

"Q. How did it come to you, Mrs. Otto?

"A. All the mail that comes to Charnoll Fashions comes to my desk, and it is opened, and after I have opened the mail it is brought to Mr. Savage or Mr. Katz's desk, whomever it would pertain to.

"Q. Now, with reference to Exhibit 114 will you tell us specifically, Mrs. Otto, did it come to you through the United States mail?

"A. It did.

\* \* \* \* \* \*

"Q. All right. Let me ask you this, Mrs. Otto. Do you recall the address of origin on the letter that came to you containing Exhibit 114?

\* \* \* \* \* \*

"A. I specifically remember that there was on the envelope a return address of Harris Discount Center. I do not recall the postdate or postmark.

"Q. Well, Mrs. Otto, I'll call your attention to the second sheet of Exhibit 114. Will you tell us how that came to you?

"A. This was included with the purchase order. And at the time this was listing credit references whom the Harris Discount Center sent along with their order."

The testimony of Mrs. Otto by itself and certainly in combination with the testimony of Dorothy Walton establishes proof of mailing as to Count 7 clearly and convincingly. Winel v. United State, supra, 8 Cir., 1966, 365 F.2d 646, 648; Stevens v. United States, 5 Cir., 1962, 306 F.2d 834, 835–836; cf., Mackett v. United States, 7 Cir., 1937, 90 F. 2d 462, 464–465. Since we find sufficient proof of use of the mails in connection with Count 7 in accordance with the cases earlier discussed, we need go no further and will omit reference thereto in the other counts.

Finding sufficient proof of mailing to support the convictions here, we proceed to a determination of whether a fatal variance existed between the dates alleged in the counts of the indictment

and the dates of mailing as adduced at the trial. The mail fraud counts, 3, 4, 7, 8, 9, 11 and 12 of the indictment, alleged that the offenses charged occurred "on or about" a certain specified date. Count 9, for example, alleges that the mailing occurred "on or about" September 13th, while the evidence shows delivery of the count document to the addressee on September 9, 1963. Similarly, the proof as to the other counts shows receipt of the count documents several days removed from that alleged. For example, Count 11 alleges a mailing on or about September 5, 1963, and the proof below shows receipt of the document on September 20, 1963, thus suggesting that the document was mailed some time after the date alleged.

A variance is not reversible error, of course, unless the variance is prejudicial. In this regard it is relevant to note that time is not an essential element of proof in a mail fraud offense. As recently stated by this court in Pritchard v. United States, supra, 1967, 386 F.2d 760, 764:

"The essential elements of the mail fraud offense are (1) a scheme devised by or knowingly and intentionally participated in by defendants which is designed to defraud victims by false pretenses or representations knowingly or intentionally made by defendants or authorized or ratified by them, and (2) the use of the mails in furtherance of such scheme."

Unless the statute under which the indictment is brought either expressly makes it so or it appears clear that the statute intended to have such effect, the exact time of the commission of the offense charged is not a substantive element of the proof. Huffman v. Sigler, 8 Cir., 1965, 352 F.2d 370, 372. It follows from this that where time is not an essential element of the crime, it is not error if the proof shows the crime was committed on a different day than charged so long as the day proved is within the period of limitations and prior to the date of indictment. An ap-

plication of this rule, which is persuasive here, is Whiteside v. United States, 8 Cir., 1965, 346 F.2d 500, 503–504, cert. denied, 384 U.S. 1023, 86 S.Ct. 1946, 16 L.Ed.2d 1025, wherein we stated:

"Appellant seizes upon the variance between the date the offenses were alleged to have been committed, 'on or about May 7, 1964,' and the date that the transaction occurred in Biederman's place of business, May 20, 1964, and argues that this discrepancy is fatal to the Government's case. We are not so persuaded. The law is clear. Where, as here, time is not an essential element of the crime, proof that the crime was committed on a day other than that alleged, if it be within the period of limitations and before the indictment is laid, is sufficient. Alexander v. United States, 271 F.2d 140, 143 (8 Cir. 1959); Cwach v. United States, 212 F.2d 520, 529 (8 Cir. 1954); Butler v. United States, 197 F.2d 561, 562 (10 Cir. 1952); United States v. Perlstein, 126 F.2d 789, 798 (3 Cir. 1942), cert. denied 316 U.S. 678, 62 S.Ct. 1106, 86 L.Ed. 1752 (1942). The indictment informed appellant fully and correctly of the offenses with which he was charged, he was not misled in making his defense and was in no way prejudiced by the claimed variance."

See, Baker v. United States, 9 Cir., April 4, 1968, 393 F.2d 604. Cf., Alexander v. United States, 8 Cir., 1959, 271 F.2d 140, 143.

The Supreme Court's decision in Berger v. United States, 1935, 295 U.S. 78, 83, 55 S.Ct. 629, 79 L.Ed. 1314, is consistent with the result obtained here, as the court there stated at 295 U.S. 82–83, 55 S.Ct. 630:

" * * * The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to 'affect the substantial rights' of the accused. The general rule that allegations and proof must correspond

is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense. Bennett v. United States, 227 U.S. 333, 338 [33 S.Ct. 288, 57 L.Ed. 531]; Harrison v. United States, [6 Cir.,] 200 F. 662, 673; United States v. Wills, [3 Cir.,] 36 F.2d 855, 856–857. Cf. Hagner v. United States, 285 U.S. 427, 431–433 [52 S.Ct. 417, 76 L.Ed. 861].

\* \* \* \* \* \*

"In Washington & Georgetown R. Co. v. Hickey, 166 U.S. 521, 531, [17 S.Ct. 661, 665, 41 L.Ed. 1101,] this court said that 'no variance ought ever to be regarded as material where the allegation and proof substantially correspond, or where the variance was not of a character which could have misled the defendant at the trial.' "

■ In view of the short period of the operation of the Bettendorf store, and the testimony of the appellants' employee Dorothy Walton who was hired by them for the specific purpose of conducting mailings during this period, we cannot say that the appellants were misled or prejudiced by the variance between the proof and charges in the indictment. United States v. Edwards, 2 Cir., 1966, 366 F.2d 853, 871–872, cert. denied, sub nom. Jakob v. United States, 386 U.S. 908, 87 S.Ct. 852, 17 L.Ed.2d 782. Cf., United States v. Doyle, 2 Cir., 1965, 348 F.2d 715, 719, n. 3, cert. denied, 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed. 2d 84.

Appellants rely upon United States v. Critchley, 3 Cir., 1965, 353 F.2d 358, 361–362, to support their contention that the indictment was amended by the variance and that the variance was prejudicial. There the court rejected the government's contention that the jury verdict was supported by threats on August 10th and October 5th because the indictment confined its allegations of wrongdoing to October 7th and 8th. In answer, we note that Critchley was a Hobbs Act case in which it is necessary to prove interference with commerce and extortion. The result in Critchley may be consistent with the Supreme Court mandate that indictments charging Hobbs Act violations be narrowly construed. Stirone v. United States, 1960, 361 U.S. 212, 218, 80 S.Ct. 270, 4 L.Ed. 2d 252. We are not here concerned with a Hobbs Act violation and we are unaware of any case even in the Third Circuit which has extended the Critchley standard to mail fraud prosecutions. Moreover, in Stirone, defendant was charged with interfering with interstate importation of sand and the proof showed interference with interstate exportation of steel. Thus the court was concerned with a variation in the offenses charged and not a mere variation in times when it found the variance material and prejudicial.

Appellants next contend that some of the evidence admitted was immaterial and was intentionally introduced to cause prejudice. The matters referred to are: References in the testimony concerning the leasing of a new black Cadillac which was leased for three months by appellant Jacobs; testimony that Davis suggested opening a charge account at a local dinner club; testimony that Jacobs and Wolcoff failed to pay a hotel bill at the Hotel Blackhawk in Davenport, Iowa; testimony from the Trustee in Bankruptcy that Wolcoff did not appear at the bankruptcy proceedings and that while Jacobs and Davis did appear, their appearance did not result in the recovery of any assets; and the introduction of Exhibits 25 through 33 which were airline tickets ordered through the Blackhawk World Travel Agency at Moline, Illinois, and given by the agency to Wolcoff and billed to Harris Discount Center, which tickets were issued for use by "George Diamond", "Harris Jacobs", "B. Gold", "Mrs. B. Gold", "I. Diamond", "Mrs. I. Diamond", "Mr. Wagner", and "Sy Gordon", and which were never paid for.

Whether these matters were immaterial depends upon the charges in the indictment. The conspiracy and mail fraud counts in the indictment charged that the appellants conspired together to rent a store, purchased fixtures therefor, advertised the store's opening, induced suppliers of merchandise to extend them credit, dissipated assets, defrauded creditors, transferred and concealed property in contemplation of bankruptcy, and concealed assets after bankruptcy. All of the matters referred to above were relevant to proving these charges as showing dissipation of assets, lulling suspicions of the store employees, impressing creditors, showing the relationship among the defendants, intention to defraud and conceal assets, and the fact that the concealment continued after bankruptcy. These matters were clearly relevant and material to the charges in the indictment and were properly connected to those charges by the prosecution so that the trial court was well within its discretion in allowing them to be presented. Cotton v. United States, 8 Cir., 1966, 361 F.2d 673, 676; Phillips v. United States, 9 Cir., 1965, 356 F.2d 297, 301, cert. denied, sub nom. Walker v. United States, 1966, 384 U.S. 952, 86 S.Ct. 1573, 16 L. Ed.2d 1548; Holt v. United States, 5 Cir., 1965, 342 F.2d 163, 166. To hold the evidence complained of here inadmissible would be to effectively adopt a rule that relevant and material evidence is rendered inadmissible if it is harmful to the defense. We are not prepared to so rule.

The appellants further argue that testimony by the witness Gordon as to a conversation he had over long distance telephone with Rosenberg, one of the conspirators convicted with the appellants and who subsequently became deceased, was without any probative value and clearly was calculated to inflame the jury. The telephone conversation took place on October 3, 1963. Gordon testified as follows:

"Q. What was said?

"A. I first asked him where my expense check was.

"Q. Did he make any reply?

"A. His reply was not to bother him with trifles when he was in the middle of trying to hold together a store.

"Q. Was there any further conversation?

"A. That the check was on its way. I then asked him what had happened to the merchandise in the store.

"Q. What did he say?

"A. I was told that the merchandise had been moved to a warehouse to make room for decorators.

"Q. Any further conversation?

"A. I believe my remark was, 'This doesn't smell right.'

"Q. Did he make a reply?

"A. Very loud and clear. He cursed me violently and said—the one remark that stood out in my mind was that if I ever mentioned his name there would be no place in the world far enough for me to hide; that he had connections with the outfit."

After various objections by counsel representing each of the four defendants, the objections were overruled and motions to strike were denied. We believe that the telephone conversation to which Gordon was testifying evidenced Rosenberg's connection with the store and with the other conspirators so that it was material. It tended to show Rosenberg's knowledge of the scheme by showing his reaction to questioning by Gordon of Rosenberg's explanation for the transfer of the merchandise and by showing Rosenberg's desire to conceal his connection with the business and with the other co-conspirators.

Lastly, appellants strenuously urge that a statement by the prosecution during closing argument amounted to a prejudicial comment on the failure of appellants to testify. The statement came during the rebuttal argument of

the prosecution and the words complained of were:

"There is some merchandise missing. There's some things the Trustee never saw, nor the Receiver, nor the creditors, nor any of us. Where is it? It's the same place this $86,742.-14 is. And there are only four people in this room that know—just four—and they are not about to tell us."

The first question is whether the statement was a comment on the failure of appellants to testify. The appellants rested after the government's case was presented and offered no evidence except for photographs offered by defendant Davis, who subsequently dismissed his appeal. Each of the appellants argued to the jury that the government had failed to establish where the missing merchandise went and that the government had failed to prove as to any defendant that any of them received this property or the proceeds thereof. We must determine then whether the statement merely called attention to the lack of evidence on the question of where the property went, as the prosecution may properly do, or whether it improperly commented on the failure of the defendants to testify as to where the property went. "* * * it was perfectly proper to comment on the lack of evidence if he didn't comment on the failure of the defendant to give it." Knowles v. United States, 10 Cir., 1955, 224 F.2d 168, 170. Lake v. United States, 8 Cir., 1962, 302 F.2d 452, 455; United States v. Johnson, 4 Cir., 1964, 337 F.2d 180, 203, aff'd 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681.

■ The comment here came on rebuttal to the strenuous defense argument noted earlier and was apparently made in passing as the last sentence was never repeated and may have reference merely to the failure of the defendants to produce evidence. This was the opinion of the trial judge who, in denying the defense motion for mistrial based on the comment, stated:

"The comment of the United States Attorney was not a direct reference to the failure of any defendant to testify. No comment was made with respect to that fact. His comment, as the Court heard it, was with reference and in rebuttal to the argument made by each and all of the defendants' counsel in this case that the Government had failed to establish where the property went or that any of the defendants had received the property or any of the proceeds thereof."

We are inclined to agree with the trial court that the language used was not "* * * manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." Knowles v. United States, supra, 224 F.2d at 170. Accord, Sterling v. United States, 9 Cir., 1964, 333 F.2d 443, 449, cert. denied, 379 U.S. 933, 85 S.Ct. 333, 13 L.Ed.2d 344; United States v. Wright, 7 Cir., 1962, 309 F.2d 735, 738–739.

■ It is also noted that the instruction requested by the appellants regarding the defendants' failure to testify was given by the trial court. The court's instructions here may very well have removed any possible prejudice from the ambiguous comment made by the prosecution. See, Knowles v. United States, supra; Sterling v. United States, supra.

Finally, we note that the Supreme Court has recently stated in Chapman v. State of California, 1967, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705:

"* * * before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. * * *"

The 21 words objected to here came during the course of lengthy closing arguments covering four hours. The words placed in context are ambiguous, they were made in passing, and they were not emphasized by repetition. Moreover, a

proper instruction submitted by defendants regarding the defendants' failure to testify was given. We feel that under these circumstances we can declare that if the comment by the prosecution did have reference to the failure of appellants to testify, we are convinced beyond a reasonable doubt that the comment was harmless.

Affirmed.