**UNITED STATES of America,**
**Appellee,**

v.

**Charles W. ANDERSON and Anita**
**Anderson, Appellants.**

**No. 20655.**

United States Court of Appeals,
Eighth Circuit.

Aug. 30, 1971.

Rehearing Denied Sept. 23, 1971.

**834**

Wiliam R. Kirby, Thad F. Niemira, St. Louis, Mo., for appellants.

Daniel Bartlett, Jr., U. S. Atty., and William C. Martin, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before VAN OOSTERHOUT, HEANEY and ROSS, Circuit Judges.

ROSS, Circuit Judge.

This is an appeal from the conviction of Charles W. Anderson and his wife, Anita Anderson, on eleven counts of an indictment charging the Andersons with use of the mail for the purpose of executing a scheme to defraud under 18 U.S.C. § 1341. We affirm in part and reverse in part.

The Andersons owned and operated Real Estate Loan & Investment Co. and Chas. W. Anderson, Inc. in St. Louis, Missouri. These corporations sold to their customers, notes, mortgages, bonds, and deeds of trust executed by those companies and by W. Dohrman and H. Dohrman, relatives of the Andersons, which purported to convey to the purchasers a security interest in various parcels of land in St. Louis. The Government alleged in the twelve count indictment that the Andersons, as a part of said scheme and artifice to defraud, "sold notes, mortgages, bonds and deeds of trust in amounts far in excess of the actual value of the properties held as securities therefor"; and made false representations "[t]hat the obligations being or to be purchased were first deeds of trust or secured by a first deed of trust, when in truth and in fact, said obligations were not so secured, as the defendants well knew." [1]

---

1. In addition to these allegations, the indictment alleged as to each count as follows:

"That title certificates or letters of opinion as to titles to real estate supplied to the investors indicated the true ownership of the properties represented as securities for the notes, mortgages, bonds or deeds of trust and offered for sale to the investors, when in truth and in fact, said title certificates or letters of opinion were false, all of which the defendants well knew.

"That the defendants would be and were acting as collecting agents of rents from the occupants of the properties which secured the obligations sold to the investors and which rental collections were being applied upon the payment of the outstanding obligations, when in truth and in fact the defendants were not so acting as collecting agents, all of which the defendants well knew.

"That the obligors on financial obligations sold to the investors were making

In each count of the indictment, an allegation was made of the mailing of a different letter to a different person for the purpose of executing the alleged scheme to defraud. Count I of the indictment was dismissed on the Government's motion. The eleven remaining counts related to notes secured by deeds of trust on six parcels of land.

On appeal, the Andersons claim: (1) that the trial court erred in overruling their motions to dismiss and to arrest judgment because the indictment failed to allege that the mailings were an essential part of the offense alleged and because it failed to allege facts to show that the mailings were within the class prohibited by the statute; that on trial, the proof did not establish beyond a reasonable doubt that the defendants defrauded those named in the indictment, and that the mailings were an essential part of the defrauding scheme; (2) that the court erred in admitting into evidence the testimony of John F. McDonald of the County Assessor's office as to the assessed value of these properties; (3) that the court erred in admitting into evidence "letter reports" from title companies purporting to show that the properties in question were encumbered by more than one deed of trust or that deeds of trust were not in fact first deeds of trust as alleged; (4) that the court erred in overruling the motions of the defendants for a bill of particulars; and (5) that the court erred in overruling the defendants' motion for a new trial.

I. SUFFICIENCY OF THE INDICTMENT

Rule 7(c) of the Federal Rules of Criminal Procedure requires that the indictment "be a plain, concise and definite written statement of the essential facts constituting the offense charged." In United States v. Debrow, 346 U.S. 374, 376, 74 S.Ct. 113, 98 L.Ed. 92 (1953), recently quoted by this Court in United States v. Edwards, 443 F.2d 1286, 1290 (8th Cir. 1971), the Supreme Court said:

"[a]n indictment is required to set forth the elements of the offense sought to be charged.

'The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, "and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offence, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction." Cochran and Sayre v. United States, 157 U.S. 286, 290, 15 S.Ct. 628, 630, 39 L.Ed. 704; Rosen v. United States, 161 U.S. 29, 34, 16 S.Ct. 434, [435], 480, 40 L.Ed. 606'. Hagner v. United States, 285 U.S. 427, 431, 52 S.Ct. 417, 419, 76 L.Ed. 861."

In Pereira v. United States, 347 U.S. 1, 8, 74 S.Ct. 358, 98 L.Ed. 435 (1954), the Supreme Court determined that the essential elements of mail fraud were "(1) a scheme to defraud, and (2) the mailing of a letter, etc., for the purpose of executing the scheme." The Court then said: "[i]t is not necessary that the scheme contemplate the use of the mails as an essential element." Id. Likewise, this Court said in Gold v. United States, 350 F.2d 953, 956 (8th Cir. 1965), that the essential elements of mail fraud were "(1) a scheme conceived by appellant for the purpose of defrauding * * * by means of false pretenses, representations

---

payments on principal and interest to the defendants to be applied on said obligations, when in truth and in fact, no payments were being made, all of which the defendants well knew.

"That the investors or purchasers of securities or obligations would receive

interest at the rate of 6.5 to 7%, payable semi-annually, with the principal obligations maturing in three years, when in truth and in fact, no such interest or principal was being paid, all of which the defendants well knew."

or promises, and (2) use of the United States mails in furtherance of that scheme." Pritchard v. United States, 386 F.2d 760, 764 (8th Cir. 1967), cert. denied sub. nom Brochelt v. United States, 390 U.S. 1004, 88 S.Ct. 1247, 20 L.Ed.2d 104 (1968); Fabian v. United States, 358 F.2d 187, 193 (8th Cir.), cert. denied, 385 U.S. 821, 87 S.Ct. 46, 17 L. Ed.2d 58 (1966); Atkinson v. United States, 344 F.2d 97, 99 (8th Cir.), cert. denied, 382 U.S. 867, 86 S.Ct. 141, 15 L.Ed.2d 106 (1965). Measured by the above pronouncements of the law, the wording of the indictment is obviously sufficient. The indictment alleges that "Charles W. Anderson and Anita Anderson * * * did devise * * * a scheme * * * to defraud" and "for the purpose of executing the aforesaid scheme * * * did place and caused to be placed in an authorized depository for mail a letter. * * *"

Our conclusion is strengthened by the fact that the indictment substantially followed "Form 3, Indictment for Mail Fraud" which is found in the Appendix of Forms attached to the Federal Rules of Criminal Procedure. *See* United States v. Bagdasian, 291 F.2d 163, 164–165 (4th Cir.), cert. denied, 368 U.S. 834, 82 S.Ct. 60, 7 L.Ed.2d 36 (1961); Martin v. United States, 285 F.2d 150, 151 (10th Cir. 1960), cert. denied, 365 U.S. 853, 81 S.Ct. 818, 5 L.Ed.2d 816 (1961).

■ It is well established that to be guilty of the crime contemplated by 18 U.S.C. § 1341, it is not necessary to prove that someone has actually been defrauded. Pereira v. United States, *supra*, 347 U.S. at 8, 74 S.Ct. 358; United States v. Gross, 416 F.2d 1205, 1209 (8th Cir. 1969), cert. denied, 397 U.S. 1013, 90 S.Ct. 1245, 25 L.Ed.2d 427 (1970); New England Enterprises, Inc. v. United States, 400 F.2d 58 (1st Cir. 1968), cert. denied, 393 U.S. 1036, 89 S.Ct. 654, 21 L.Ed.2d 581 (1969) and other cases cited therein; Pritchard v. United States, *supra*, 386 F.2d at 764.

The Andersons' contention that the mailings were not proved to be an essen-tial part of the alleged defrauding scheme is not well taken. As stated in Parr v. United States, 363 U.S. 370, 390, 80 S.Ct. 1171, 1183, 4 L.Ed.2d 1277 (1960), "only if the mailings were 'a part of the execution of the fraud,' or, as we said in Pereira v. United States, 347 U.S. 1, 8 [74 S.Ct. 358, 363, 98 L.Ed. 435], were 'incident to an essential part of the scheme,' do they fall within the ban of the federal mail fraud statute."

The mailing sent out on November 19, 1968, as alleged in Count II of the indictment, was sent to Ervin Rottmann in an effort to get him to invest money in notes secured by trust deeds to several properties, including 800 Coach 'N Six Court. The mailing sent out on December 22, 1964, as alleged in Count III of the indictment, was sent to Mrs. Mayme Schmidt enclosing $3,000.00 of first deed of trust on #800 Coach 'N Six Court, dated December 12th, 1964, * * *" Mrs. Schmidt testified that she also received a title letter from the Andersons dated January 20, 1965, and purportedly written by "Land Title Insurance Company" which indicated that Chas. W. Anderson, Inc. had clear title to 800 Coach 'N Six Court, subject to a single deed of trust in the sum of $9,500.00 recorded December 21, 1964. The evidence also established that this title letter was not prepared by Land Title Insurance Company. These mailings were clearly "incident to an essential part of the scheme." Parr v. United States, *supra*, 363 U.S. at 390, 80 S.Ct. at 1183.

The allegation that the Government presented no evidence that the Andersons had any "intent to defraud" at the time the scheme was put into operation is also without merit. As this Court indicated in Anderson v. United States, 369 F.2d 11, 15 (8th Cir. 1966), cert. denied, 386 U.S. 976, 87 S.Ct. 1171, 18 L.Ed.2d 136 (1967), a jury may consider in its determination of intent the totality of defendants' conduct while involved in their scheme. An examination of the record, as exemplified by but the few examples mentioned herein, compels the conclusion that there was substantial evidence from

which intent to defraud could have been found.

## II. EVIDENCE OF VALUE

The indictment alleges as to each count that as part of the scheme to defraud devised by the defendants, they sold to their customers notes and deeds of trust "in amounts far in excess of the actual value of properties held as securities therefor." They also alleged as to each count that the defendants knowingly made false representations that the value of the property used as security for the obligation to be purchased by the investor was far in excess of mortgages and liens against it. These allegations in the indictment made it incumbent upon the Government to prove the actual value of the six parcels of real estate involved in the eleven counts, and the amount of the encumbrances against them.

The Government offered the testimony of John F. McDonald, Chief Appraiser in the Department of Revenue in the Assessment Division of St. Louis County, as to the values placed upon each of these six parcels for tax assessment purposes in St. Louis County. The Andersons claim that this evidence was inadmissible and failed to establish a proper basis for determining actual value of each parcel. We agree.

At the time he testified, McDonald had in his possession the official records of St. Louis County showing the appraised "market value" and "valuation for tax purposes" of each of the six parcels in question. The appraisals had been made by an independent appraisal firm under contract to the county and not by McDonald. The appraisals were made in 1958 (2 parcels), 1959, 1962, 1964 and 1966 (one parcel each year). The Government did not offer the records or copies thereof into evidence, but only offered the oral testimony of McDonald as to the contents of the records. Objections were timely made to the testimony and overruled. Oral testimony as to the contents of these records was hearsay, was not the best evidence, and was not admissible to prove the value of the parcels of real estate.

This Court said in Murdock v. United States, 160 F.2d 358, 361 (8th Cir. 1947), that "the valuation of property by tax assessors for tax purposes is not admissible to establish market value in condemnation proceedings * * * *". This would be even more true in a criminal case where, as here, aside from being hearsay and not the best evidence, the testimony was given by a person who had not actually appraised the property in question, thus depriving the defendants of their sixth amendment right to be confronted with the witnesses against them.

It is our conclusion that this evidence was inadmissible, and therefore not proof of the allegation of each of the eleven counts, that the market value of each of the six properties was far less than the outstanding deeds of trust. Since this was an essential element of the alleged scheme to defraud, the motion for judgment of acquittal made at the close of all the evidence should have been sustained as to all counts as to which this was the only evidence of value.

However, there is other evidence in the record which is adequate to prove that the market value of one property—800 Coach 'N Six Court—was far less than the mortgages and deeds of trust against it. This property is involved in Counts II and III of the indictment. The Government's exhibit 32B is a letter dated November 19, 1968, from Chas. W. Anderson, on behalf of Real Estate Loan & Investment Co. to Mr. Ervin Rottmann and was received in evidence without objection. In that letter, Mr. Anderson made the following statement:

"We are enclosing with this letter a list of the loans held by the investor mentioned above. This list indicates the properties involved, the type of property, when the loans are due, the total amount of the deed of trust on each property, our estimate of the value of each property, and the amount of the participating notes held by the investor. These notes range from $1,000 to $5,000 each."

Attached to the letter was a sheet showing that 800 Coach 'N Six Court was a vacant lot having a value of $12,000.00 with $9,500.00 "total Mortgage" against it.[2]

The Government also produced evidence, which was received without objection, in the form of bankruptcy schedules filed on behalf of Real Estate Loan & Investment Co. and signed by Anita Anderson which show that when the mailings alleged in Counts II and III were made, on December 22, 1964, and on November 19, 1968, there were notes secured by deeds of trust outstanding against 800 Coach 'N Six Court exceeding $75,000.00. A letter from General Title Service Corporation, dated November 19, 1968, Government's exhibit 96, showed that there were deeds of trust recorded against this property as follows:

| Recording Date | Amount |
| --- | --- |
| October 4, 1961 | $28,500.00 |
| June 24, 1963 | 8,000.00 |
| April 17, 1964 | 10,000.00 |
| December 21, 1964 | 9,500.00 |
| Total | $56,000.00 |

The title letter did not show the recording of a deed of trust on or about October 15, 1963, but the bankruptcy schedules reveal that on February 28, 1969, there were six creditors who held notes dated October 15, 1963, totaling $24,500.00, which were secured by a deed of trust on 800 Coach 'N Six Court. The record is clear that as of the date of the mailings in Counts II and III, the total amount of the outstanding deeds of trust issued by the Andersons on 800 Coach 'N Six Court was far in excess of its value. The testimony also showed that there was an uncompleted structure on this property and that no revenue was being derived from it.

The evidence apart from the assessor's testimony with respect to Counts

II and III is strong on the issue that outstanding trust deeds were issued far in excess of the value of the property. Under such circumstances, we are satisfied that the admission of the assessor's value with respect to the property involved in such counts is not prejudicial. With respect to the remaining counts, we feel the error in the admission of the assessor's testimony was prejudicial.

### III. TITLE LETTERS

We will consider the contentions of the Andersons relating to the admissibility of title letters only as it relates to 800 Coach 'N Six Court in view of our holding in the preceding section.

Over objection, the district court admitted Government exhibit 96, a title letter on 800 Coach 'N Six Court from the General Title Service Corporation, under the Business Records Act, 28 U.S. C. § 1732. The Andersons contend (1) that exhibit 96 was inadmissible to establish that the instruments purchased by the investors were not first deeds of trust because it (a) did not qualify under the Business Act, (b) was not the best evidence, and (c) was opinion testimony, and (2) that, since exhibit 96 was so used, it was highly prejudicial, denying defendants a fair and impartial trial. With both of these contentions, we disagree.

Section 1732 has but two requirements. First, the record must have been made in the regular course of business; and second, the regular course of business must have been to make such records contemporaneously or within a reasonable time thereafter. The record discloses that both of these requirements were satisfied. Mr. Barnes, a title examiner for General Title Service Corporation, testified that the nature of their business was to prepare title letters after searching the county and court records. This testimony was confirmed by Mr.

2. This letter also contained an admission as to the value of 905 Surrey Lane. However, the discrepancy between its actual value and the total amount of the deeds of trust recorded against it is not, in this Court's opinion, "far in excess" of the property's actual value as alleged in the indictment.

Janning, vice president and secretary of General Title Service Corporation, who then testified that exhibit 96 was prepared in the regular and usual course of the business. The letter, which was prepared for an attorney not involved in this case, was properly admitted under the Business Record Act, and defendants' argument that exhibit 96 was not the best evidence is without merit. The best evidence rule does not apply to records admitted under the Business Records Act. United States v. Vandersee, 279 F.2d 176, 180 (3rd Cir. 1960); United States v. Kimmel, 274 F.2d 54, 57 (2nd Cir. 1960). Defendants' argument that Mr. Barnes' testimony is opinion since he did not prepare exhibit 96 is also without merit. One of the purposes of section 1732 was to eliminate the requirement that the entrant must appear to authenticate the record. United States v. Re, 336 F.2d 306, 314 (2nd Cir.), cert. denied, 379 U.S. 904, 85 S.Ct. 188, 13 L.Ed. 2d 177 (1964).

Assuming arguendo, however, that exhibit 96 should not have been admitted into evidence, we conclude that such admission did not deny the Andersons a fair and impartial trial. Instead, since the record reveals an abundance of evidence, excluding exhibit 96, to support the conclusion that these investors did not purchase *first* deeds of trust, we believe that its use at most would be harmless error under Rule 52(a) of the Federal Rules of Criminal Procedure. *See* Kotteakos v. United States, 328 U.S. 750, 764–765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); Buie v. United States, 420 F.2d 1207, 1210 (5th Cir. 1969), cert. denied, 398 U.S. 932, 90 S.Ct. 1830, 26 L.Ed.2d 97 (1970).

It has heretofore been noted that the bankrupcty schedules filed by the Andersons showed that there were several trust deeds against 800 Coach 'N Six Court prior to the mailings in question and in a total amount far in excess of its market value. This in itself is sufficient corroboration of the information contained in exhibit 96.

We have considered the other points raised by the Andersons and have found them to be without merit, especially in view of the disposition we now make of this case.

For the reasons set forth above, we affirm the judgment of conviction as to Counts II and III of the indictment. As to Counts IV, V, VI, VII, VIII, IX, X, XI, and XII we reverse and remand for further proceedings consistent with the views expressed in this opinion.