**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Lorenzo QUINONES–ALVARADO and
Roberto I. Ferrer-Vega, Defendants-
Appellants.**

**No. 71–3391.**

United States Court of Appeals,
Fifth Circuit.

July 20, 1972.

Rehearing Denied Sept. 25, 1972.

Louis C. LaCour, New Orleans, La. (court-appointed), for Alvarado.

John E. Unsworth, Jr., New Orleans, La. (court-appointed), for Vega.

Gerald J. Gallinghouse, U. S. Atty., Patrick C. McGinity, Mary Williams Cazalas, Asst. U. S. Attys., New Orleans, La. for plaintiff-appellee.

Before TUTTLE, MORGAN and RONEY, Circuit Judges.

RONEY, Circuit Judge:

Appellants were indicted in *Count I* for illegally importing approximately 88.7 pounds of hashish into the United States, and in *Count II* for receiving, concealing, and facilitating the transportation of hashish. 21 U.S.C. § 176a and 18 U.S.C. § 2. The jury found Quinones-Alvarado (Alvarado) guilty of both counts. Ferrer-Vega (Ferrer) was convicted under Count II. We affirm.

Both appellants challenge the sufficiency of the evidence. Although circumstantial, we find the evidence sufficient to support the jury verdicts.

Viewed in a light most favorable to the government, Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L. Ed. 680 (1942), we find that the circumstantial evidence was such that the jury could find that every reasonable hypothesis except that of guilt was excluded beyond a reasonable doubt. Surrett v. United States, 421 F.2d 403 (5th Cir. 1970). The test is not whether in our opinion the evidence excludes every reasonable hypothesis of innocence, but rather whether the jury might so con-

clude from the inferences which it was entitled to draw from the evidence. United States v. Sidan-Azzam, 457 F.2d 1309 (5th Cir. 1972) and cases cited therein.

The evidence showed the following: Manuel Santos, the key government witness but not a defendant, and Alvarado were shipmates on the SS STONEWALL JACKSON which docked at New Orleans on July 30, 1970, after a voyage to the Middle East which included stops at Bombay and Karachi. On the night of July 30th Santos went to a bar in New Orleans where he met Alvarado. They were joined later by Ferrer. Sometime between 5:00 and 6:00 A.M. on July 31st, after Santos had returned to the vessel to complete some work, he observed Alvarado and Ferrer leaving the SS STONEWALL JACKSON with two black leather suitcases which they placed in the open trunk of an automobile parked by the gangway. He observed them drive off in the automobile. Later that day Santos again met both appellants at the same bar. Alvarado asked Santos to take a suitcase to New York and after some hesitation, Santos agreed.

The next day, Alvarado met Santos as he departed the ship. Upon lifting one of the suitcases that Alvarado had brought for him to take to New York, Santos said it was too heavy and refused to take it. Alvarado became agitated and asked Santos for his New York address which Santos gave as the Greystone Hotel, 221 West 91st Street, New York, New York. Santos then took a plane to New York without the suitcases.

Two days later Alvarado and Ferrer took a footlocker to the Greyhound Bus Station in New Orleans for shipment to New York. Upon weighing the footlocker, the agent said that it weighed 135 pounds and was too heavy for shipment, 100 pounds being the maximum allowed. Alvarado and Ferrer then left but returned shortly thereafter with the same footlocker and a suitcase. Ferrer identi-

fied himself to the agent as Manuel Santos and filled out tags for the footlocker and suitcase as being sent to M. Santos in New York from Manuel Santos in New Orleans.

On August 4, 1970, the next day, an agent of the Bureau of Narcotics and Dangerous Drugs in New York was notified by his regional office that baggage believed to contain a large quantity of hashish was being shipped from New Orleans to New York via a Greyhound bus. The footlocker and suitcase were placed under surveillance at the Greyhound terminal in New York after their arrival on August 5th. On August 7th the agent received information that someone had attempted to claim the baggage but had left without waiting for it. The agent did not see the individual because the claims office and the baggage were on different levels of the terminal building.

On or about August 7th Alvarado, who was then in New York, telephoned Santos at the Greystone Hotel and stated that he had sent his baggage to New York by Greyhound but that the station refused to permit him to pick it up because he did not have the notice sent by the company. Alvarado asked Santos to check his mail at the hotel for the notice. When the hotel manager gave Santos the notice from Greyhound, Alvarado asked Santos to meet him at the terminal with the notice so that the baggage could be obtained.

Santos went to the station with Paulino Flores, Alvarado's nephew, and waited about twenty minutes for Alvarado who never appeared. Santos then went to the clerk at the station to pick up the baggage. He told her that it was not his, but that it had been sent to him. After obtaining the footlocker and suitcase, Santos was arrested by the narcotics agent.

Under the authority of a search warrant, the agent broke open the baggage and found hashish. All of the evidence was taken to his office where it was placed in a vault pending analysis. Lat-

er chemical analysis confirmed that the contents were in fact hashish.

## I. *Sufficiency of Evidence as to Alvarado*

█ We think this evidence was sufficient to support the verdicts against Alvarado. Alvarado was a member of the crew of the SS STONEWALL JACKSON which had made stops at ports in the Middle East—an area notorious for its dealings in drugs of all types. A customs agent testified that upon arrival in New Orleans the ship's manifest did not show a shipment of hashish. Alvarado was seen carrying two suitcases off the ship in the early morning. He unsuccessfully sought to have Santos take the suitcases to New York. He later appeared at the Greyhound terminal in New Orleans with first an overweight footlocker and then a footlocker and a suitcase which were shipped to Santos' address in New York. The shipping employee positively identified Alvarado as one of the men who brought the baggage to the Greyhound Bus Station in New Orleans. Alvarado was easily identifiable because of the splotched or mottled condition of his face. The footlocker and suitcase were both locked when they arrived in New York. Santos testified that the suitcase containing the hashish was similar to the one he saw Alvarado remove from the ship.

From a complete review of the record, we think the jury could exclude every reasonable hypothesis except that Alvarado illegally imported the hashish and caused it to be transported to New York.

## II. *Sufficiency of Evidence as to Ferrer*

█ The evidence against Ferrer is likewise sufficient to support the verdict against him. Ferrer was seen in the company of Alvarado removing two suitcases from the SS STONEWALL JACKSON. He was not a crew member of that ship. Ferrer went with Alvarado to the Greyhound Station in New Orleans when the footlocker was determined to be too heavy for shipment to New York. Shortly thereafter he returned with Alvarado and a footlocker and suitcase. He held himself out to be Manuel Santos and actually filled out the baggage tags in that name.

█ Of course the knowledge of possession of the hashish may be proved by circumstantial evidence. Montoya v. United States, 402 F.2d 847 (5th Cir. 1968). The evidence of Ferrer's activities reasonably supports a jury inference that he knew that the baggage contained hashish.

The evidence almost compels an inference that Ferrer learned what was in the baggage sometime between his first and second trips to the Greyhound Station when the footlocker was reduced in weight and the suitcase added to the shipment, if he did not know before. The evidence was sufficient for his conviction.

## III. *Other Points on Appeal*

There is no merit to the additional challenges that Alvarado makes as to (a) the trial court's denial of his motion for a Bill of Particulars, (b) the trial court's admission of immaterial hearsay, and (c) the jury instructions.

█ Alvarado was sufficiently apprised of the charges against him, the ramblings in the testimony of Santos were either neutralized by instructions or not prejudicial to Alvarado, and the jury instructions were not objected to and contained no plain error.

Affirmed.