**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Thomas CONSTANT, Defendant-Appellant.**

**No. 73–4015.**

United States Court of Appeals, Fifth Circuit.

Oct. 4, 1974.

J. V. Eskenazi, Federal Public Defender (Court-appointed, not under Act), Edward B. Greene, Asst. Federal Public Defender, Miami, Fla., for defendant-appellant.

Robert W. Rust, U. S. Atty., Donald C. Ferguson, Don R. Boswell, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before WISDOM and CLARK, Circuit Judges, and GROOMS, District Judge.

WISDOM, Circuit Judge:

Thomas Constant appeals from his conviction for causing the use of the United States mails to further a scheme or artifice to defraud, in violation of 18 U.S.C. § 1341.[1] He advances four

---

1. 18 U.S.C. § 1341 provides:
 Frauds and swindles
 Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any

grounds for reversal. First, he contends that counts one and fourteen of his indictment were defective in that they failed to allege that his scheme "contemplated or caused the use of the United States mails". Second, he argues that the trial court should have declared a mistrial. The prosecutor attempted to impeach Constant by referring to a prior conviction, but she offered no proof that Constant had been convicted of the offense in question. Constant denied having committed it, and, after a bench conference out of the hearing of the jury, there was no further mention of it. Third, the appellant argues that the evidence was insufficient to prove the allegation under the fourteenth count of the indictment that he caused a letter to be placed in an authorized depository for mail for delivery in the Southern District of Florida. Finally, he urges that the evidence adduced to prove the first count of the indictment showed that the use of the mails happened "after the [allegedly] fraudulent scheme had reached fruition" and therefore was not reached by the statute.

Constant was originally charged with violations of 18 U.S.C. § 1341 in a fourteen count indictment. Before trial, the Assistant United States Attorney moved to dismiss seven counts. The defendant was tried before a jury on the remaining counts. The jury found him guilty of two counts, and not guilty of the five others. The court entered judgment on the verdicts, and later denied the defendant's motion for a new trial. The motion was based on the alleged prosecutorial misconduct in the attempted impeachment of the defendant and the court's refusal to declare a mistrial. The court sentenced the defendant to serve three years in the custody of the Attorney General on each of the two counts, the sentences to run concurrently. In the exercise of its discretion under 18 U.S.C. § 3651, the court directed that the defendant serve two months' actual incarceration, suspended the remainder of the sentence, and provided for three years' probation following imprisonment.

Constant maintained two checking accounts between March 24, 1969, and June 13, 1969, one at the Monmouth County National Bank in New Jersey, and the other at the Hollywood Bank and Trust Company in Florida. During this period, he wrote a series of checks drawn on each bank and deposited the checks drawn against the New Jersey bank in the Florida bank and vice versa. At no time during this period did he have sufficient funds to cover all the checks. The record supports the central allegation of the first count of the indictment that the defendant "on or about June 12, 1969 . . . for the purpose of executing the . . . scheme and artifice to defraud and attempting to do so, knowingly caused to be placed in an authorized depository for mail matter to be sent and delivered by mail according to directions thereon . . . a letter containing the check [in the amount of $3200] drawn on the Monmouth County National Bank. . . ." The record also supports the charge of the fourteenth count that the defendant "for the purpose of executing the . . . scheme and artifice to defraud and attempting to do so, knowingly caused to be placed in an authorized depository for mail matter, to be sent and delivered by mail according to the directions thereon, to the Hollywood Bank . . . from the Monmouth County National Bank . . . a letter containing the . . . check [payable to and signed by the appellant, and drawn on his Hollywood bank account in the amount of $3200]". The defend-

post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

ant testified that he deposited the $3200 check drawn on the Hollywood bank in the New Jersey bank on June 9, 1969, that he withdraw $2000 in cash from the New Jersey bank on June 9 or 10, 1969, and that he deposited the $3200 check drawn on the New Jersey bank into his Hollywood bank account in person on June 11, 1969.

## I.

■ The appellant's first contention is that the language of the first and fourteenth counts of the indictment is insufficient in not alleging that "the depository mentioned was a facility of the United States Postal Service as opposed to some private postal system." We hold the indictment sufficient.

■ Rule 7(c) of the Federal Rules of Criminal Procedure provides that the indictment must "be a plain, concise and definite written statement of the essential facts constituting the offense charged." In construing 18 U.S.C. § 1341, the Supreme Court has held that the essential elements of the offense the statute proscribes are "(1) a scheme to defraud, and (2) the mailing of a letter, etc., for the purpose of executing the scheme," and that "[i]t is not necessary that the scheme contemplate the use of the mails as an essential element." Pereira v. United States, 1954, 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435. But the use of the mails must be closely related to the furtherance of the scheme or artifice. United States v. Maze, 1974, 414 U.S. 395, 94 S.Ct. 645, 38 L. Ed.2d 603. And, although the indictment must set forth all the elements of the offense, the Supreme Court has said that "[t]he true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be

charged, 'and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.'" United States v. Debrow, 1953, 346 U.S. 374, 376, 74 S.Ct. 113, 114, 98 L.Ed. 92, 96, *quoting* Hagner v. United States, 1933, 285 U.S. 427, 431, 52 S.Ct. 417, 419, 76 L.Ed. 861, 865. The exact statutory words need not be used in the indictment, if it is otherwise sufficient. Glenn v. United States, 5 Cir. 1962, 303 F.2d 536.

Judged by these standards, the omission from the indictment of the allegation that the "authorized depository for mail matter" was a depository of the United States Postal Service was not a fatal defect. The indictment adequately alleged the scheme or artifice to defraud and the use of the mail in furtherance of that scheme or artifice. It was sufficient to give the defendant notice of the offense with which he was charged and permits an accurate determination of the extent to which he may plead former acquittal or conviction if future prosecutions are brought against him.[2]

## II.

The appellant maintains that the trial court should have granted the motion for a mistrial on the basis of the following exchange, during cross-examination, between him and Mrs. Anderson, the prosecutor:

Q. Mr. Constant, have you ever been convicted of a felony?

A. No.

Q. Where were you in April of 1971?

A. New Jersey.

---

2. A similar challenge to the sufficiency of an indictment was rejected in United States v. Anderson, 8 Cir. 1971, 447 F.2d 833. The court noted in that case: "Our conclusion is strengthened by the fact that the indictment substantially followed 'Form 3, Indictment for Mail Fraud' which is found in the Appendix of Forms attached to the Federal Rules of Criminal Procedure." *Id.* at 836 (citations omitted).

Q. Specifically where?

A. West Allenhurst.

Q. Weren't you convicted for carrying a dangerous weapon and threatening to kill?

A. No, I was not.

MR. GREENE [counsel for appellant]: Objection. Objection.

THE COURT: Counsel, approach the Bench.

This exchange was all the jury heard regarding the possibility that Constant had a prior conviction for a felony. The prosecution made no effort to prove that he had been convicted of a felony, and the trial court's charge to the jury made no reference to the incident.

During the bench conference [3] immediately following the incident, the discussion centered on whether the defendant had been convicted of a felony or of a crime involving moral turpitude, offenses that may be used for impeachment. The trial court apparently assumed that the questions had been proper and that the nature of the crime made evidence of conviction admissible for impeachment purposes, because he stated, in denying the motion for a new trial and ending the bench conference, that such evidence "[g]oes to the credibility of the witness and that is what it is all about." There is nothing in the record before us, apart from the prosecutor's reference in the bench conference to a "rap sheet" listing the alleged conviction, tending to prove that the defendant had been convicted of the offense the prosecutor mentioned before the jury.

 In general, we are in agreement with the view taken by the First Circuit in a similar case: " . . . to ask a defendant whether he has had criminal convictions, without possessing a certified copy of the record, is fraught with possibilities of error . . . . We would be slow to find that any such error was not prejudicial." Ciravolo v. United States, 1 Cir. 1967, 384 F.2d 54. In *Ciravolo* the court reversed the conviction and remanded for a new trial. It was demonstrated, by means of a certified record submitted to the appellate court at oral argument in that case, that the crime for which the defendant had been convicted was only a misdemeanor, and hence an improper predicate for an attempt to impeach him. A crucial element in the prosecution's case in *Ciravolo* was that the defendant had formed an intent to convert before crossing the state line. The prior misdemeanor conviction was based on facts similar to those that led to the prosecution in that case, and the defendant admitted the conviction and was examined at some length about them. Constant's case is different. Constant denied having been convicted. The offense the prosecutor mentioned was unlike the crime for

---

3. The following colloquy took place out of the hearing of the jury:

MR. GREENE: I move for a mistrial.

MRS. ANDERSON: Your Honor, I have his rap sheet and there is no question but what this man was convicted and sentenced to three years in prison for threatening to kill, the sentence being suspended. That is a felony, and under the law we are allowed to inquire into the nature and the number of convictions and the date and time of each.

. . . . . . .

MR. GREENE: Better be a felony and better be convicted.

MRS. ANDERSON: Your Honor, it is.

THE COURT: Three year sentence, it has to be.

MR. GREENE: No, that is the Federal standard. The question is, under state law, Judge, I think it has to be a felony.

MRS. ANDERSON: Fifth Circuit case includes a misdemeanor as well as a felony. That is USA vs. Bedgood, decided January 1972. However, I am relying on a felony.

THE COURT: Do you want to respond?

MR. GREENE: I move for a mistrial.

THE COURT: Denied.

MRS. ANDERSON: Thank you.

MR. GREENE: In the alternative, I object to any reference along these lines. Completely irrelevant. Doesn't go to his credibility, unless it is shown to be a felony under the law of applicable jurisdiction.

Clearly an attempt to prejudice the jury. No probative value.

THE COURT: I don't agree with that. Goes to the credibility of the witness and that is what it is all about.

I will deny the motion.

which the defendant was being tried. There was, moreover, overwhelming evidence of Constant's guilt. He had made statements in the course of an interview with Postal Inspector Dixon that he had in fact written and deposited the checks and made the withdrawals as charged. His only defense was that he intended to make the checks good at some later time, and he did not introduce any other evidence of later attempts to cover the checks or of any amounts owing to him from third parties or any other resources from which he could have covered the checks.

In the circumstances, the allegation of a prior conviction and the failure to prove it when denied in this case was harmless error. We are mindful that "harmless-error rules can work very unfair and mischievous results". *Chapman v. California*, 1967, 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705, 710. The error in this case is of a type that has the potential for great prejudice, but it is not for that reason alone an error of constitutional proportions, and therefore must be judged by the standard applicable to nonconstitutional errors established in Kotteakos v. United States, 1946, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557. In *Kotteakos,* the Court said:

> If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress. . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

328 U.S. at 764–765, 66 S.Ct. at 1248. *See generally* Saltzburg, The Harm of Harmless Error, 59 Va.L.Rev. 988 (1973).

Applying the standard of *Kotteakos* to the record in the case before us, we find the prosecutor's conduct of the cross-examination regarding the alleged prior conviction to be harmless, in light of the overwhelming evidence of guilt. We must note, however, that the prosecutor's handling of the matter was improper. She should have refrained from inquiring into a prior conviction or have been prepared to prove the conviction by competent evidence and demonstrate to the trial court that the character of the crime was such that evidence of conviction is admissible to impeach a defendant in a criminal case. In a case where the proof is less compelling than it is here, such prosecutorial misconduct might well be a sufficient ground in itself for granting a new trial.

### III.

▮ The appellant's third argument is that the evidence was insufficient to prove the fourteenth count of the indictment. The fourteenth count alleged that "[o]n or about June 9, 1969, in the Southern District of Florida, Thomas Constant, the defendant, for the purpose of executing the aforesaid scheme and artifice to defraud and attempting to do so, knowingly caused to be placed in an authorized depository for mail matter, to be sent and delivered by mail according to the directions thereon, to the Hollywood Bank and Trust Company, Hollywood, Florida, from the Monmouth County National Bank in New Jersey, a letter containing the [$3200 check drawn on the Hollywood bank]". Part of his argument rests on the assertion that the phrase "in the Southern District of Florida", modifies "depository" and there was no proof that the letter containing the check ever was in a "depository" in Florida, as that term is defined by the Postal Service.

We think the phrase modifies "to be delivered", and that there was sufficient evidence to show that the appellant caused the check in question to be mailed to the bank upon which it was drawn, in Hollywood, Florida. Constant himself testified that he deposited the check in his account at the New Jersey bank. A bookkeeper for that bank testified that the usual practice at the bank was to send such checks through the Federal Reserve Bank in New York, and that the checks in turn were mailed to the bank on which they were drawn. Viewing this evidence in the light most favorable to the Government, Glasser v. United States, 1942, 315 U.S. 60, 62 S. Ct. 457, 86 L.Ed. 680, we find it sufficient to support the conviction. The jury could find beyond a reasonable doubt, on the basis of this evidence, that every other reasonable hypothesis except that of guilt was excluded. *See* United States v. Quinones-Alvarado, 5 Cir. 1972, 464 F.2d 12.

### IV.

■ Finally, the appellant argues that the mail fraud statute, 18 U.S.C. § 1341, does not reach his conduct under the first and fourteenth counts of the indictment because that conduct was not closely enough related to the use of the United States Postal Service. The proof tended to show that Constant deposited a $3200 check in the New Jersey bank drawn on the Florida bank on June 9, 1969; and that on June 11, 1969, he appeared in person at the Florida bank and deposited a $3200 check drawn on the New Jersey bank, which that bank later refused to honor. In the interim, he withdrew $2000 from the New Jersey bank. The net result was that the Florida bank, having paid the check the appellant deposited in New Jersey on June 9, 1969, sustained the loss. The appellant argues in his brief: "When defendant visited the Hollywood Bank on June 11, 1969, it is uncontradicted that the Bank permitted him to deposit the check; the Bank did not receive it for collection only. When the check was deposited, defendant's account was credited in the amount of $3200. At that moment, the scheme had reached fruition. . . . The mailing alleged in Count 1, i. e., from the Hollywood Bank to the Monmouth Bank, was not necessary to the success of the check-kiting scheme. The mailing was to serve the purpose of the Hollywood Bank; not to serve the purposes of the Hollywood Bank; not to further the fraudulent scheme." The appellant relies heavily on United States v. Maze, 1974, 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603, decided after his trial. We believe, however, that the present case is distinguishable from *Maze* and the cases upon which it is based, and we hold that 18 U.S.C. § 1341 does reach the appellant's conduct.

In *Maze* the defendant had unlawfully used another person's bank credit card to "pay" for accommodations at motels in California, Louisiana, and Florida in the course of a cross-country journey, resulting in the mailing of the invoices to the bank that had issued the card to the lawful owner, and from that bank to the owner. The Court held that he could not be prosecuted under 18 U.S.C. § 1341 because the scheme "reached fruition" when he checked out of each of the motels, and the use of the mails was for the purpose of "adjusting accounts" among the motels, the bank, and the owner, and not, as the statute requires, "for the purpose of executing" the scheme. 414 U.S. at 401, 94 S.Ct. at 649, 38 L.Ed.2d at 609.

To reach the result that it did in *Maze,* the Court had to distinguish Pereira v. United States, 1954, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435. In *Pereira,* the defendant was prosecuted under 18 U.S.C. § 1341 for defrauding a widow of her property after marrying her. The widow was persuaded to sell certain securities. She did so and gave the $35,000 check she received in payment to the defendant, who endorsed it for collection and subsequently procured a cashier's check payable to him from the proceeds. The *Maze* Court distinguished *Pereira* on the ground that "the mail-

ings in *Pereira* played a significant part in enabling the defendant in that case to acquire dominion over the $35,000 with which he ultimately absconded." 414 U.S. at 401, 94 S.Ct. at 649, 38 L.Ed.2d at 609.

In the present case, the use of the mails played an equally significant part in enabling Constant to obtain the $3200 credit to his New Jersey bank account from which he made the $2000 cash withdrawal. The mailing alleged in the fourteenth count was of the check drawn on the Florida bank that he deposited in the New Jersey bank to obtain the credit. Far from being an insignificant bookkeeping procedure, unrelated to his scheme, the mailing was a central element, for the evidence shows that after making the New Jersey deposit, Constant immediately proceeded to Florida and deposited a $3200 check drawn on the New Jersey bank into his Florida account. He was, in effect, racing against the mail in this sudden departure for Florida. He was living at the time in New Jersey, and it is fair to infer from his actions upon depositing the check in New Jersey that he was conscious that that bank would proceed against him unless it collected the proceeds of the check. This collection was made possible by the bank's procedure of clearing checks through the mail. Seizing on the advantage this practice afforded, Constant was able to deposit the $3200 check in the Florida bank in time for the New Jersey bank to collect its funds.[4] The use of the mails in achieving this result is sufficient to make Constant's conduct punishable under 18 U. S.C. § 1341.

We need not consider whether the mailing of the check deposited in the Florida bank that is the subject of the first count of the indictment was a substantial enough part of the scheme to be punishable under 18 U.S.C. § 1341, since the sentence the court imposed on this count was identical to and concurrent with the sentence imposed on the fourteenth count. *See, e. g.,* United States v. Laite, 5 Cir. 1969, 418 F.2d 576, 581.

For the reasons stated, the conviction must be

Affirmed.

---

4. We note that the ultimate liability for the loss suffered on account of Constant's scheme as between the New Jersey and Florida banks is governed by Article IV of the Uniform Commercial Code.