The UNITED STATES

v.

Fred C. TALLANT, Sr. and William M. Womack, Jr.

Crim. A. No. 74–225A.

United States District Court, N. D. Georgia, Atlanta Division.

June 20, 1975.

Motion for Severance Denied Sept. 16, 1975.

Dorothy T. Beasley, Asst. U. S. Atty., Atlanta, Ga., for plaintiff.

E. Lewis Hansen, Atlanta, Ga., Carl L. Shipley, Washington, D. C., for defendants.

## ORDER

RICHARD C. FREEMAN, District Judge.

■ This is a prosecution for fraud in the sale of securities, mail fraud, conspiracy, and obstruction of justice. *See* 15 U.S.C. § 77q(a); 18 U.S.C. §§ 371, 1341 and 1505. In a prior order, this court denied in part defendants' motion to dismiss the indictment based on objections to the array of the Grand Jury, but deferred a final ruling pending submission of evidence by the Government regarding the vote of the Grand Jury. *United States v. Tallant,* Criminal Action No. 74–225A (N.D.Ga. March 11, 1975). The Government has filed an affidavit to the effect that fifteen grand jurors voted to return the indictment; therefore, as noted in the prior order, the disqualification of one of their members does not compel dismissal of the indictment. *See id;* Rules 6(b)(2) and 6(f), Fed.R.Crim.P. Defendants concede that this information requires rejection of their motion.

Accordingly, the motion to dismiss the indictment because of defects in the array of the Grand Jury is DENIED.

This action is also pending on several other motions, including "combined motions" for discovery and inspection, a motion to inspect Grand Jury minutes, a motion to dismiss the indictment, and a motion for a bill of particulars. These motions will be discussed seriatim.

■■ In the "combined motions", defendants seek discovery, as pointed out by the Government, of virtually the entirety of the Government's case. Defendants seek to discover all written, as well as oral statements made by the defendants to Government agents; all tangible and documentary evidence in the possession of the Government; a list of all Government witnesses, including informants and other persons having information relevant to the charges in the indictment; copies of "any prior criminal record [of Government witnesses?] . . . available to the attorney for the Government;" and all evidence favorable to the defendants. Defendants predicate their motion on Rules 16 and 17(c), Fed.R. Crim.P. and the due process clause. In opposition, the Government points out that Rule 17(c) is not a discovery device, *e. g., Bowman Dairy Co. v. United States,* 341 U.S. 214, 71 S.Ct. 675, 95 L.Ed. 879 (1951); that some of the matters raised in this motion are more properly raised in the motion for a bill of particulars; that some of the information sought is not discoverable under the Jencks Act; and that a request for virtually all of the Government's tangible and documentary evidence is unreasonable and overbroad, and impermissible under Rule 16(b). The Government's contentions in this regard are correct; and moreover, it appears, on review of the Government's response, that some of the information sought by the instant motion has been provided by the Government, thereby rendering a portion of the motion moot. Arguably the only portion of the motion which may not be moot deals with the production of documentary and tangible evidence, *see* Local Court

R. 181.414; and this court agrees that a generalized request for such evidence is insufficient. On the other hand, the old, strict limitations on discovery, some of which the Government obviously seeks to rely on in this action, have largely been eliminated by modern practice. *See generally* 8 J. Moore, *Moore's Federal Practice* ¶ 16.05[4] (1975). The emphasis under modern practice is on reasonableness and cooperation by counsel. This emphasis is carried forward in the local rules of this court. *See* Local Court R. 181.43.

█ In accordance with the foregoing, it is inappropriate for this court to rule on the remaining viable portions, if any, of the motion for discovery at this time. Should defendants desire additional discovery, they should ensure that their request fully complies with the letter and spirit of Local Court R. 181.43 *et seq.* Furthermore, to the extent defendants desire additional discovery pursuant to Rule 16, Fed.R.Crim.P., they should fully comply with Local Rule 91.5 (conference with opposing counsel) and Local Rule 91.1 (motion must be accompanied by memorandum of law). Accordingly, the "combined motions" are hereby DENIED as moot, without prejudice to the filing of subsequent motions for discovery, not later than fifteen (15) days from the date of this order, upon compliance with the aforementioned procedural requirements.

█ The motion to inspect Grand Jury minutes has also been mooted in part by the aforementioned affidavit relating to the vote of the Grand Jury, to the extent that the motion is predicated on possible undue influence by the disqualified juror. The other portions of the motion remain viable; however, it is evident that defendants seek, in part, to challenge the sufficiency of the Government's evidence presented to the Grand Jury. It is well settled that an indictment is not subject to challenge on the ground that the Grand Jury acted on the basis of inadequate or incompetent evidence. *See, e. g., United States v. Ca-*

*landra,* 414 U.S. 338, 345, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956); *United States v. Newcomb,* 488 F.2d 190 (5th Cir. 1974). As a result, a motion to inspect Grand Jury minutes predicated on this ground is insufficient. Defendants also seek to inspect the Grand Jury minutes to determine the effect of pre-trial publicity on the deliberations of the Grand Jury. Defendants have also filed a motion to dismiss the indictment on this ground. In light of the disposition of this motion, as discussed below, inquiry into the Grand Jury minutes on this ground is unwarranted. As a final matter, the inspection of Grand Jury minutes to determine the effect of defendants' being unable to appear during the deliberations of the Grand Jury is also not warranted, since prospective indictees "may not, as a matter of a constitutional right, compel transcription of the grand jury proceeding, attend the proceedings personally or through counsel, cross-examine witnesses at the proceeding, or introduce evidence or compel the introduction of exculpatory evidence at the proceeding." *Cohen v. Stokes,* Civil Action No. 75–765 (N.D.Ga. April 22, 1975), *reconsideration denied,* (N.D.Ga. May 6, 1975). *See United States v. Calandra, supra.* Accordingly, defendants' motion to inspect the Grand Jury minutes is hereby DENIED.

Defendants have also filed a motion to dismiss the indictment. The indictment in question charges defendants with violation of the securities laws, mail fraud, obstruction of justice, and conspiracy, and consists of twelve counts, containing substantial recitation of overt acts and other information regarding the charges. Because of the length of the indictment, and the length of defendant's motion with regard to dismissal of the indictment, to the extent possible, the court will consider the merits of defendants' arguments in relation to the various counts of the indictment to which they apply.

The first portion of the motion to dismiss relates to Counts I–VI[1] of the indictment. These counts charge defendants with five types of activities alleged to be violative of § 17 of the Securities Act of 1933, 15 U.S.C. § 77q(a). Four of these activities are listed in Count I. First, the indictment charges that defendants

> did, directly and indirectly, wilfully and knowingly employ a device, scheme and artifice to defraud, obtain money and property by means of untrue statements of material facts and omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and engage in transactions, practices and a course of business which operated and would operate as a fraud and deceit upon purchasers of said securities . . . whom defendants believed could be induced to purchase said securities . . . .

Following this allegation, Count I lists several pages of acts purportedly constituting this violation. In essence, these acts consist of the sale of securities on time payment plans, the reacquisition of the securities upon default by the purchasers, and the resale of the stock as original issue stock. On resale, the defaulted stock was purportedly falsely represented to be original issue stock, the proceeds of which would be used for the purpose of Preferred Land Corporation (hereinafter PLC). This portion of Count I also charges defendants with causing certain corporate records to be falsified in order to conceal the allegedly fraudulent scheme.

Paragraph (2) of Count I alleges that "defendants made and caused to be made divers false, misleading and fraudulent representations, pretenses and promises, both orally and in writing, well knowing that said representations . . . were false." The representations listed consist of alleged statements in a prospectus, dated January 8, 1969, regarding the source of the common stock offered by means of that prospectus, the amount and disposition of the net proceeds, and the potentiality of a public market for the shares. No specific instances of "oral" misrepresentations are charged. The third species of conduct charged in Count I relates to the actual marketing of the PLC stock. This portion of the indictment alleges that "defendants concealed and omitted and caused to be concealed and omitted in prospectuses, sales presentations, solicitations and otherwise, material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading . . . . ." The specific omissions and misstatements relate to the resale of reacquired stock without providing investors with information regarding the disposition of the proceeds of the sale; information consisting of the price at which the stock was reacquired; and information regarding the availability of the stock to employees, officers and directors of PLC and friends of defendant Tallant at substantially lower prices. The last portion of Count I sets forth the overt act necessary to the consummation of the alleged fraudulent scheme and necessary to constitute a violation of the securities laws: the mailing of 1,000 shares of PLC stock, on or about April 18, 1969, to Mary N. Hancock.

In support of their motion to dismiss Count I, defendants reassert, in part, their arguments regarding the insufficiency of the evidence before the Grand Jury, arguing that the allegations in the indictment were part of a "rigged presentation" in violation of defendants' Fifth Amendment rights. Defendants contend that "[l]ike a spider weaving a web, the U. S. Attorney's office has strung together a series of [legal] business actions . . . to make it look ominous by reciting the large figures as

---

1. The first portion of defendants' motion specifically relates to Counts I–V of the indictment; but the substance of this portion of the motion applies equally to all of the securities fraud counts, including Count VI.

to stock issued, but omitting the de minimis figures of the [defaulted] stock . . . [resold by defendants]." Defendants also argue that as they may not be convicted for "causing" violations of the Act, the facts alleged do not constitute a violation of the 1933 Act. Furthermore, defendants contend that all their activities were legal under Georgia law and subject to the intrastate exemption provided by 15 U.S.C. § 77c; therefore defendants argue that these activities may not be violations of federal law. Finally, defendants contend that all stock sold was original issue stock, rather than "defaulted" stock as alleged, arguing that if defendants had been permitted to appear before the Grand Jury, the "truth of the matter" would have been revealed.

■■ To the extent that defendants have repeated arguments with respect to the sufficiency of evidence before the Grand Jury, their contentions have already been disposed of. As noted above, the insufficiency of the evidence before the Grand Jury is not a basis for dismissal of the indictment. Moreover, to the extent that defendants dispute the factual contentions of the indictment, the remedy is to convince the petit jury members, at trial, of the veracity of their side of the story. As a general matter, the question of whether or not a particular defense may be raised by means of a Rule 12(b) motion turns on whether or not that defense may be decided solely on issues of law. *See United States v. Miller*, 491 F.2d 638, 647 (5th Cir. 1974). In essence, a motion to dismiss is appropriate if "trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." 8 J. Moore, *supra* ¶ 12.04 at 12–15 (Supp.1975). The defense asserted in this portion of the instant motion is a defense on the merits and must be asserted at trial; therefore it is necessary to turn to the portion of the motion which may be construed as raising a legal contention which may properly be disposed of by means of a motion to dismiss. In this posture, the question for

resolution is whether an indictment which alleges that defendants "caused" reacquired stock to be sold as original issue stock, published misleading statements regarding the stock, and caused falsification of corporate records in furtherance of the scheme states a violation of the 1933 Act.

Defendants argue that a violation of the 1933 Act requires specific intent, and that a series of transactions legal under Georgia law may not constitute a scheme involving specific intent to defraud under federal law. In addition, noting that the transactions in issue purportedly qualify for the aforementioned intrastate exemption, defendants argue that the activities involved here concern essentially Georgia intrastate matters and that it would be unreasonable to require a prospectus legal under Georgia law to meet some unspecified S.E.C. requirement under federal law. Defendants contend that such a result would make the S.E.C. a censor of all Georgia-licensed security transactions.

■■ In response to this argument, the Government correctly notes that the intrastate exemption is not applicable to criminal conduct, such as that charged here: "The exemptions provided in section 77c of this title shall not apply to the provisions of this section." 15 U.S.C. § 77q(c). Similarly, relying on a case involving the mail fraud statute, 18 U.S.C. § 1341, the Government notes that control over the use of the mail lies with Congress and not with the states, and that Congress may forbid any mailing contrary to public policy, whether or not the scheme violates state law. *United States v. Edwards*, 458 F.2d 875, 880 (5th Cir. 1972). *See Parr v. United States*, 363 U.S. 370, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1960). This court agrees with the Government that these same principles are equally applicable in an action involving mail fraud and securities fraud; for, under 15 U.S.C. § 77q(a), use of the mails is an essential element of the offense. *See, e. g., Harper v. United States*, 143 F.2d 795 (8th Cir. 1944); *Holmes v. United States*, 134 F.2d 125 (8th Cir. 1943). *See generally Unit-*

*ed States v. Ashdown*, 509 F.2d 793 (5th Cir. 1975). Thus, irrespective of whether or not the conduct in question violated state law, upon employment of the jurisdictional key, use of the mails, there is no doubt that the federal courts may punish alleged wrongdoers for conduct which violates federal law.

An offense under § 77q of the 1933 Act contains two essential elements: (1) a scheme to defraud purchasers of securities and (2) the use of the mails in furtherance of that scheme. *See Holmes v. United States, supra.* The existence of a scheme to defraud is a question for the jury, *id.*; and, the allegations in the instant indictment are sufficient to set forth such a scheme. What must be shown at trial is that "the scheme had an impact on the investor and that the mails were used in employing the scheme." *United States v. Ashdown, supra.* Defendants also argue that specific intent to defraud must be shown, but this contention is subject to some dispute. *See United States v. Schaefer*, 299 F.2d 625 (7th Cir.) *cert. denied*, 370 U.S. 917, 82 S.Ct. 1553, 8 L.Ed.2d 497 (1962). In any event, allegations that defendants caused certain acts to be done in furtherance of their fraudulent scheme are sufficient to withstand the instant motion to dismiss. *See United States v. Constant*, 501 F.2d 1284, 1286–87 (5th Cir. 1974).

In summary, in considering the sufficiency of an indictment, it is well settled that an indictment need not be drafted in the precise terms of the statute, but that the indictment is sufficient if it gives the defendants "notice of the offense . . . charged and permits an accurate determination of the extent to which [they] may plead former acquittal or conviction if future prosecutions are brought against [them]." *Id.* at 1287. The allegations relevant to the charged offenses in Count I of the indictment clearly fulfill this standard.

Defendants' allegations with respect to the insufficiency of the other charges relevant to the securities fraud aspect of this case are similar. These charges are contained in Counts II–VI of the indictment. These counts involve separate instances of the same allegedly improper conduct, and incorporate most of the allegations set forth in Count I. This conduct is described as follows:

On or about April 20, 1969 defendants . . . did, directly and indirectly, wilfully and knowingly, in the offer and sale of securities, . . . by use of the mails, employ the aforesaid scheme and artifice to defraud, obtain monies and properties by means of untrue statements of material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and engage in transactions . . . which operated and would operate as a fraud and deceit upon the purchasers of said securities, said use of the mails being as follows: . . . .

These various counts set forth five separate instances in which defendants allegedly used the mails to deliver certificates of PLC stock to defrauded purchasers. For the reasons stated above, these allegations are also sufficient to state violations of the 1933 Act; and defendants' arguments to the contrary are without merit.

Defendants also contend that Counts I–VI should be dismissed because "[b]y no stretch of the mind can it be said Congress intended for prosecutorial discretion in securities cases developed by the S.E.C. and referable to the Attorney General, to be an exercise of prosecutorial discretion to be sub-delegated to a civil service employee [the assistant United States Attorney] instead of a Presidential appointee." In addition, defendants contend that this action is barred by the applicable statute of limitations. *See* 18 U.S.C. § 3282 (5 years).

In response to these contentions, the Government points out that identical claims with respect to the prosecutorial discretion issue have been authoritatively determined adversely to defendants, and defendants do not now contend other-

wise. *See Preferred Land Corp. v. Stokes,* Civil Action No. 74–720 (N.D.Ga. April 17, 1974), aff'd mem. 505 F.2d 733 (5th Cir. 1974); *Tallant v. Moye,* 419 U.S. 821, 95 S.Ct. 156, 42 L.Ed.2d 128 (1974) (motion for leave to file writ of mandamus denied); *id.* (5th Cir. 1974). In response to the statute of limitations aspect of the motions, the Government points out that its allegation that the conduct charged in Count I occurred "on or about April 18, 1969" is sufficient to withstand the instant motion. The indictment in question was filed on April 17, 1974. If indeed, the act necessary to execute the scheme charged in Count I, use of the mails, was consummated prior to the listed date, then it is possible that defendants may be protected by the statute of limitations. *See United States v. Ashdown, supra* at 797–98. This is an evidentiary question which should more properly be raised at trial. *See United States v. Miller, supra.* The other charged acts allegedly occurred more recently and are apparently not encompassed by the portion of this motion founded on statute of limitations grounds.

Defendants also predicate their motion to dismiss Counts I–VI of the indictment on adverse, pre-trial and pre-indictment publicity. Since this ground applies equally to the indictment in its entirety, it will be discussed last; therefore it is appropriate to turn to defendants' arguments with regard to the other offenses charged in the indictment: mail fraud, obstruction of justice, and conspiracy.

 The portions of the indictment relevant to the mail fraud charge consist of Counts VII–X. These counts incorporate certain of the allegations of Count I and list separate instances in which "defendants for the purpose of executing the aforesaid scheme and artifice and attempting to do so, caused to be placed in an authorized depository for mail . . . ." certain materials relevant to the allegedly fraudulent securities transactions in issue. This wording substantially tracks the wording of 18 U.S.C. § 1341 and is clearly sufficient to allege a violation of that statute. *United States v. Constant, supra.* Defendants do not contend otherwise, but argue instead that the alleged fraudulent scheme was completed when the contracts for the sale of securities were entered into, and that the use of the mails was too remote from the alleged misrepresentation by defendants regarding the nature of the stock sold to be an integral or essential part of the alleged scheme. This contention is without merit and has been specifically rejected by the Court of Appeals for the Fifth Circuit: "[I]t is a well-established principle of mail fraud law that use of the mails after the money [from sale of stock] is obtained may nevertheless be 'for the purpose of executing' the fraud." *United States v. Ashdown, supra* at 799.

 The conspiracy charge is contained in Count XI of the complaint, which also lists three overt acts in furtherance of the conspiracy: (1) presentation of falsified stock transfer records to S.E.C. investigators; (2) deposit by defendant Womack of $5,000.00 received as proceeds from the sale of 2,500 shares of PLC stock; and (3) deposit by defendant Tallant of $10,000.00 received as proceeds from the sale of 5,000 shares of PLC stock. Defendants contend that presentation of falsified records to the S.E.C. cannot be an overt act in furtherance of a mail fraud conspiracy, arguing also that until the records are subject to an S.E.C. subpoena, alleged falsification of those records cannot be a violation of 15 U.S.C. § 77q. Finally, defendants contend that overt acts two and three above are normal business transactions and that there is no causal connection between the investors named in those acts and the alleged scheme to defraud. In opposition, the Government points out that two of the investors named in the aforementioned overt acts are also named as being defrauded pursuant to the allegations of Counts IV and V. Furthermore, the Government points out that defendants have not cited any authority in support of their argument that presentation of falsified records to the

S.E.C. may not constitute an overt act in furtherance of a stock fraud conspiracy. On the other hand, the Government has cited cases to the effect that showing later perfected actions is sufficient to prove a conspiracy, *e. g., United States v. Milisci,* 465 F.2d 700, 703 (5th Cir.), *cert. denied,* 409 U.S. 1076, 93 S.Ct. 684, 34 L.Ed.2d 664 (1972); and to the effect that the overt act need not be criminal in and of itself, *e. g., Reese v. United States,* 353 F.2d 732, 734 (5th Cir. 1965). In sum, the Government argues, and this court agrees that "one overt act, whether lawful or unlawful, committed in pursuance of a conspiracy, is sufficient to charge defendants with commission of an unlawful act." Defendants' arguments to the contrary are without merit.

▮▮ The last count of the indictment alleges that defendant Womack "corruptly influenced, obstructed and impeded and endeavored to influence, obstruct and impede [an S.E.C. proceeding] . . . in that defendant Womack caused certain stockholder ledger records of Preferred Land Corporation to be falsified and presented them to [the S.E.C.] investigators. . . ." Defendant contends that falsification of records before a proceeding is commenced is not a violation of 18 U.S.C. § 1505, and that presentation of previously falsified records is likewise not a violation. Defendant also argues that this count of the indictment is unduly vague, since it fails to list the persons defendant Womack caused to falsify the entries, the time and date and the manner in which the entries were falsified, and where or on which of the 7,000 pages of ledger entries the falsifications appear. The only authority cited in support of these arguments is *United States v. Batten,* 226 F.Supp. 492 (D.D.C.1964), *cert. denied* 380 U.S. 912, 85 S.Ct. 898, 13 L.Ed.2d 799 (1965). This case is not in

point, since it involved intimidation of a witness and a motion for judgment of acquittal. In fact, the *Batten* court specifically noted that § 1505 "is broad enough to cover any activity which would influence or intimidate a witness who *might* be called to testify." *Id.* at 494 (emphasis added). Similarly, the statute is broad enough arguably to include falsification of records in anticipation of an agency subpoena. In any event, this court has concluded the presentation of intentionally falsified records to the S.E.C. constitutes an offense under § 1505. Defendant Womack's arguments to the contrary are without merit.

▮ In response to defendant's vagueness argument, the Government points out that an indictment which sets out the elements of the offense is sufficient, particularly when drafted substantially in the words of the statute. *E. g., United States v. Debrow,* 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92 (1953); *United States v. Fischetti,* 450 F.2d 34 (5th Cir. 1971), *cert. denied* 405 U.S. 1016, 92 S.Ct. 1290, 31 L.Ed.2d 478 (1972); *Esperti v. United States,* 406 F.2d 148 (5th Cir.), *cert. denied* 394 U.S. 1000, 89 S.Ct. 1591, 22 L.Ed.2d 777 (1969). Arguably, the indictment might have been more specific as to the dates of the S.E.C. investigation, and the exact date of the hearing at which defendant allegedly presented the falsified records, *see United States v. Alo,* 439 F.2d 751 (2d Cir.), *cert. denied,* 404 U.S. 850, 92 S.Ct. 86, 30 L.Ed.2d 89 (1971); however, under the circumstances of this case, the omission of such dates does not render Count XII of the indictment so vague as to warrant its dismissal.[2]

▮ The final argument espoused in support of the motion to dismiss relates to allegedly prejudicial pre-trial publici-

---

**2.** Some courts have approved indictments containing language to the effect that a defendant "wilfully" violated § 1505. *E. g. United States v. Alo, supra* at 756. Where willfulness is specifically set out in a statute, it is an essential element of the offense and must be

charged in the indictment. *E. g. United States v. Fischetti, supra* at 39. Willfulness language does not appear in § 1505; therefore the absence of such language in the instant indictment does not render that indictment defective.

ty. Although defendants' contentions in this regard relate only to the counts founded on the securities law violations, it would seem that prejudicial publicity, if any, would equally taint the entire indictment. In support of their motion, defendants have submitted an exhibit, consisting of fifteen or more newspaper articles published in the Atlanta Journal, during a period of two years, from December, 1972 through February, 1974. Defendants contend that these articles were part of a campaign to encourage enactment of a new Georgia Blue Sky Law, and that they were so slanted against defendants as to appeal to the passions and prejudices of the Grand Jury and the United States Attorney and thereby make them incapable of considering the evidence impartially. In response, the Government notes that all of the articles were published before the indictment was returned, and that the only article appearing thereafter was a technical S.E.C. release not disseminated to the general public. As a result, the Government correctly notes that the question for the court must relate solely to the effect of the pre-indictment publicity on the Grand Jury proceedings.

With regard to this question, the Government argues that dismissal of an indictment because of pre-indictment publicity requires more than mere conjecture regarding possible Grand Jury bias and prejudice, noting that pre-indictment publicity alone is insufficient. *E. g., Estes v. United States,* 335 F.2d 609, 613 (5th Cir. 1964), *cert. denied,* 379 U.S. 964, 85 S.Ct. 656, 13 L.Ed.2d 559 (1965). This court agrees that defendants have not made a sufficient showing of bias or prejudice on the part of the Grand Jurors or the U. S. Attorney, for there is no doubt that the burden on defendants in such cases is heavy:

> It does not appear that any indictment has thus far been dismissed on [the] ground [of pre-indictment publicity]. Though objection is pitched on the bias of the grand jurors, its underlying basis should probably be a violation of due process, predicated on the generat-

ing of prejudicial publicity *by the government.*

8 J. Moore, *supra* ¶ 6.03[4] at 6–42.3–.4 (emphasis added). There is no allegation or indication in the record that the Government was the driving force behind the various newspaper articles alleged to be prejudicial. Moreover, the articles, albeit somewhat slanted toward the goal of enacting more effective state securities laws, are reasonable examples of investigative journalism which generally recite factual details regarding the various judicial and agency actions involving PLC and its principal officers. In fact, several of the articles discuss lawsuits which were actually instituted by defendants herein. Under these circumstances, this court agrees with the following comments:

> To accept the contention urged by the defendants as a rule of law certainly would produce absurd results since no one who is prominent and well known could be charged with the commission of any crime because the charge against such a person no doubt would cause very large and widespread adverse publicity, precluding an indictment.

*United States v. Hoffa,* 205 F.Supp. 710, 717 (S.D.Fla.), *cert. denied,* 371 U.S. 892, 83 S.Ct. 188, 9 L.Ed.2d 125 (1962). If indeed, adverse publicity has or might affect defendants' forthcoming trial, the court has more than adequate resources to alleviate the effects of such publicity. *See Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). Dismissal of the indictment is not one of the remedies that should be invoked in this case.

Accordingly, for the reasons set forth hereinabove, all of the defendants' objections to the sufficiency of the indictment are without merit; therefore their motion to dismiss the indictment, or certain counts of the indictment, is hereby denied.

The final motion submitted by defendants is a motion for a bill of particulars. Defendants' request contains some thir-

ty-five numbered paragraphs, and, as stated by defendants, seeks to discover the "locations, times, persons involved, or the substance of the various alleged criminal violations" charged. As such, this motion is in effect a substitute, in part, for the "combined motions" discussed above and is also directed to the legal sufficiency of the indictment. In response, the Government argues that a motion for a bill of particulars is not intended to provide a means by which defendants may compel the Government to disclose its evidence, concluding that the instant motion should be denied in toto.

The function of a bill of particulars in a criminal case is to render an indictment sufficiently specific to apprise a defendant of the nature and the cause of the accusation in order that he may prepare for trial, may be spared surprise at trial and, after judgment, may be able to plead the record in judgment in bar of a further prosecution for the same offense. *E. g., United States v. Bearden,* 423 F.2d 805 (5th Cir.), *cert. denied,* 400 U.S. 836, 91 S.Ct. 73, 27 L.Ed.2d 68 (1970); *Downing v. United States,* 348 F.2d 594 (5th Cir.), *cert. denied,* 382 U.S. 901, 86 S.Ct. 235, 15 L.Ed.2d 155 (1965). Moreover, when the demand goes "to the Government's proof rather than to a clarification of the indictment . . . [it] cannot be granted on a motion for a bill of particulars." *United States v. Smith,* 341 F.Supp. 687, 690 (N.D.Ga. 1972). In the instant case, some of the information sought might serve to clarify the indictment; however, in conjunction with clarification, it is evident that the Government would be required to reveal, in part, evidence relative to the presentation of its case. In this case, the indictment, some fourteen pages long, taken in conjunction with the lengthy S.E.C. investigation and the various judicial actions involving the securities transactions forming the basis for this case, is more than adequate to inform defendants on the nature of the case and enable them to adequately prepare for trial. In fact, this court agrees,

in large part with the Government's assertion that "[s]eldom does an indictment go so far to acquaint a defendant with the charges against him." The one deficiency, as noted above, concerns the omission of specific dates regarding the conduct allegedly constituting the obstruction of justice charge in Count XII. In addition, the court has also concluded that disclosure of similar information regarding the dates and places of certain of the conduct charged in paragraphs (2) and (3) of Count I would also be warranted. This information should be provided to enable defendants to properly defend against these charges.

Accordingly, defendants' motion for a bill of particulars is denied, except insofar as it relates to information sought by numbered paragraphs (7)–(9), (13), and (35). With respect to the information sought in paragraph (35), the Government is hereby ordered to provide defendant Womack with the exact date or dates of the S.E.C. proceedings at which he allegedly presented falsified records. With respect to the information sought in paragraphs (7)–(9), the Government is hereby ordered to inform defendants of the exact dates on which the alleged oral communications were made, the places where they were made, and the persons to whom they were made. With respect to the information sought in paragraph (13), the Government is hereby ordered to inform defendants of the dates of the alleged sales presentations and solicitations and similar activities giving rise to the conduct charged in Count I, paragraph (3) of the indictment, as well as the place where these activities were carried out. In all other respects, defendants' motion for a bill of particulars is denied.

In sum, this court has denied defendants' motion to dismiss because of irregularities in the Grand Jury proceedings, including disqualification of one of the Grand Jurors; denied without prejudice the motions for discovery and inspection; denied the motion to inspect the Grand Jury minutes; denied the motion to dismiss the indictment on the ground of its

insufficiency; and denied in part and granted in part the motion for a bill of particulars.

It is so ordered.

## ON MOTION FOR SEVERANCE

### ORDER

This is a prosecution for fraud in the sale of securities, mail fraud, conspiracy, and obstruction of justice. *See* 15 U.S.C. § 77q(a); 18 U.S.C. §§ 371, 1341, and 1505. The action is presently before the court on defendants' motion for "severance, election and to dismiss certain counts" and on defendants' motion to reconsider a portion of the order of this court entered on June 20, 1975. These motions will be discussed seriatim.

### THE MOTION FOR SEVERANCE

██ As noted above, this motion is a joint motion for severance and/or for dismissal; however, following the filing of the instant motion, this court entered an order completely disposing of the legal arguments raised by defendants with respect to dismissal of the indictment. *United States v. Tallant*, Crim.Action No. 74–225A (N.D.Ga. June 20, 1975). The essence of these arguments, as expressed in the instant motion, relates to defendants' contention that a series of business transactions legal under Georgia law cannot be illegal under federal law, noting that the securities sales in issue were licensed in Georgia and subject to the "states rights" exemption regarding intrastate sales of securities provided by federal law. In addition, defendants argue that they cannot be convicted of a criminal offense since the provisions of Section 17 of the Securities Act of 1933 only relate to civil and *not* criminal fraud. This latter contention is wholly without merit, as a brief review of the numerous cases cited by this court in the June 20, 1975 order will indicate. *E. g., United States v. Ashdown*, 509 F.2d 793 (5th Cir. 1975). Similarly, defendants' "states rights" arguments have likewise been disposed of in that order:

[T]he intrastate exemption is not applicable to criminal conduct, such as that charged here: "The exemptions provided in section 77c of this title shall not apply to the provisions of this section." 15 U.S.C. § 77q(c). . . . [C]ontrol over the use of the mail lies with Congress and not with the states, and . . . Congress may forbid any mailing contrary to public policy, whether or not the scheme violates state law. [citations omitted]. . . [T]hese same principles are equally applicable in an action involving mail fraud and securities fraud; for, under 15 U.S.C. § 77q(a), use of the mails is an essential element of the offense. [citations omitted]. Thus, *irrespective of whether or not the conduct in question violated state law, upon employment of the jurisdictional key, use of the mails, there is no doubt that the federal courts may punish alleged wrongdoers for conduct which violates federal law.*

*United States v. Tallant, supra* at p. 885–886 (emphasis added).

██ Turning to the arguments specifically related to the question of misjoinder under Rule 8, Fed.R.Crim.P. and the propriety of severance under Rule 14, it is evident that defendants' contentions relate primarily to misjoinder of offenses under Rule 8(a) rather than misjoinder of defendants under Rule 8(b). Under Rule 8(b), the courts have ruled that "improper joinder is inherently prejudicial and that granting of a motion for severance, where there has been misjoinder, is mandatory and not discretionary . . . ." *United States v. Bova*, 493 F.2d 33, 35 (5th Cir. 1974). *See McElroy v. United States*, 164 U.S. 76, 17 S.Ct. 31, 41 L.Ed. 355 (1896). This court does not doubt that joinder of two defendants charged with wholly separate offenses, albeit similar offenses, would be inherently prejudicial; however, as discussed in the June 20, 1975 order, the indictment in issue here charges defendants, the president and chief executive officer and the chief financial officer of

Preferred Land Corp., with conspiring to effectuate a scheme to defraud the purchasers of Preferred Land securities. As pointed out by the Government, the execution of a single scheme to defraud may involve more than one criminal offense. *E. g., Sanders v. United States*, 415 F.2d 621 (5th Cir. 1969), *cert. denied*, 397 U.S. 976, 90 S.Ct. 1096, 25 L.Ed.2d 135 (1970); *United States v. Anzelmo*, 319 F.2d 1106, 1122–23 (E.D.La.1970). Similarly, under Rule 8(b), two defendants who have allegedly conspired to effectuate this scheme and who are accordingly guilty of the same offenses, if they are guilty of any offenses at all, may be indicted together, tried together, and ultimately acquitted or convicted together. In fact, even where co-defendants are charged with separate crimes, where the series of transactions are sufficiently interrelated and intertwined, a joint trial would be permissible. *United States v. Strand*, 517 F.2d 711 (5th Cir. 1975). As a result, further consideration of misjoinder under Rule 8(b) is not warranted.

■ Defendants do not argue that joinder in this case is "inherently prejudicial" under Rule 8(b), but base their arguments instead on the provisions of Rule 8(a), which reads in relevant part as follows:

Two or more offenses may be charged in the same indictment . . . in a separate count for each offense if the offenses charged . . . are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Defendants contend that each offense in the present indictment is based on a different statute with different statutory elements, different facts, different dates, and involving different persons. As a result, defendants argue that the offenses charged "are not offenses of the same character, and they are not based on the same transactions or connected together or parts of a common scheme." In opposition, the Government argues

that the essence of the instant action involves a single scheme, charged in count I of the indictment, which must be proved in order to convict defendants of the offenses charged in counts I–X of the indictment, noting also that evidence of the acts charged in counts XI and XII is admissible to prove the requisite intent with respect to the violations alleged in counts I–X. The Governments' contentions are correct.

As noted above, the essence of this action involves a series of transactions, consummated over a number of years, which allegedly constituted part and parcel of a scheme to defraud the purchasers of Preferred Land stock. Defendants contentions to the contrary are simply without merit. Certainly, misjoinder under Rule 8(b) may be *per se* prejudicial, *United States v. Bova, supra* ; however, perhaps in recognition that two separate, but otherwise identical trials of the same allegedly illegal scheme would not serve the interests of justice or of judicial economy, defendants do not seek severance for misjoinder under Rule 8(b). Instead, defendants seek severance of the various counts of the indictment according to the offenses charged, *i. e.* defendants seek separate trials of the counts charging securities fraud, mail fraud, conspiracy, and obstruction of justice. *See* Rule 8(a). Alleged misjoinder under Rule 8(a) does not result in "inherent" or *per se* prejudice; and, pursuant to the terms of Rule 14, the question of severance is committed to the sound discretion of the court. *E. g., United States v. Pacheco*, 489 F.2d 554 (5th Cir. 1974); *United States v. Perez*, 489 F.2d 51 (5th Cir. 1973), *cert. denied*, 417 U.S. 945, 94 S.Ct. 3067, 41 L.Ed.2d 664 (1974).

■ The relevant considerations with respect to severance under Rule 14 have been discussed as follows:

The rules are liberal in permitting joinder at trial, both of offenses and of defendants. Although this permits wide latitude on the prosecution in determining the form in which the case is to be prosecuted the trial court has both the duty and the authority to

order a severance at any time during the trial if it believes that impermissible prejudice would otherwise result. Thus, the serious problem of reconciling the sometimes competing interests of trial economy and danger of prejudice to defendants necessarily resides in the discretion of the trial Judge. Motions for severance under Rule 14 have rarely been granted and the trial court's decision has not been disturbed absent a clear showing of abuse. [citations omitted]. The general rule has been, and remains, that persons jointly indicted should be tried together, especially in conspiracy cases.

*United States v. Perez, supra* at 65. Although the distinctions between Rule 8(a) and Rule 8(b) often involve impossibly fine differences of degree; and although misjoinder under Rule 8(b) may sometimes be inherently prejudicial, it is clear that the trial judge may remedy this prejudice at any time, when it appears; however, absent any showing of prejudice whatsoever, inherent or otherwise, severance is simply not warranted. *Id.* (defendant must show "compelling" prejudice, rather than merely "some" prejudice); *accord, United States v. Pacheco, supra.*

■ Every complex, multi-count conspiracy case involves some difficulty and confusion to the jury, the court, and the parties, and hence some degree of prejudice; however, the mere fact that the case involves "multitudinous and complex transactions" is no reason to hold separate trials on each aspect of this indictment. *See United States v. Wayman,* 510 F.2d 1020 (5th Cir. 1975). In this case, the relationship between the various counts is quite apparent, and some or all of the evidence necessary to establish the substantive offense charged in count I, is equally necessary to establish the offenses charged in the other counts.[1] *See United States v. Pacheco, supra.* As a result, this court has concluded that joinder of defendants and

offenses in this action serves the purposes inherent in Rule 8, by avoiding "duplication of time and effort of both the prosecution and the courts and minimiz[ing] the prejudice to the defendants." *United States v. Gentile, supra,* at 630. Accordingly, defendants' motion for severance or an election under Rule 14 is hereby denied.

## MOTION FOR RECONSIDERATION

■ In this motion, defendants once again raise their curious "states rights" arguments founded upon the inapplicable intrastate exemption, arguing also that violation of 15 U.S.C. § 77q is not a crime; however, the essence of their argument in support of the instant motion concerns their contention that the United States Attorney may not usurp the discretion of the Attorney General in determining whether criminal prosecutions may be instituted for violation of the antifraud provisions of the Securities Act of 1933. Defendants argue that this court should make a "specific ruling dismissing the indictment herein in its entirety as improperly obtained by the U. S. Attorney in the absence of an exercise of discretion by the Attorney General under § 20g of the Securities Act of 1933 [15 U.S.C. § 77t(b)]."

In the prior order, this court noted that these contentions had been authoritatively determined adversely to defendants by three courts, including the United States Supreme Court, *e. g., Tallant v. Moye,* 419 U.S. 821, 95 S.Ct. 156, 42 L.Ed.2d 128 (1974) (motion for leave to file writ of mandamus denied); however, defendants now argue that these courts did not consider the merits of the arguments, but merely based their decision on the general reluctance of courts to intervene preemptively in the criminal process by the use of extraordinary writs. *See, e. g., Cohen v. Stokes,* Civil Action No. 75–765 (N.D.Ga. April 22, 1975), *reconsideration denied,* (May 6, 1975); *cf. United States v. Calandra,* 414

---

1. "[W]hen the facts underlying each offense are so closely connected that proof of such facts is necessary to establish each offense, joinder of defendants and offenses is proper." *United States v. Gentile,* 495 F.2d 626, 630 (5th Cir. 1974).

U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). While this contention may be partially correct, insofar as the res judicata or collateral estoppel aspects of defendants' prior applications for extraordinary relief are concerned, this court has reviewed the transcript of the oral hearing conducted before Judge Moye in *Preferred Land Corp. v. Stokes*, Civil Action No. 74–720 (N.D.Ga. Apr. 17, 1974), *aff'd mem.* 505 F.2d 733 (5th Cir. 1974); and it is clear that arguments identical to those asserted in the instant motion were also raised in that action. Irrespective of the reasons for the decisions of the various courts on this matter,[2] this court has concluded that defendants' arguments are without merit.

In support of their arguments, defendants rely on the plain language of 15 U.S.C. § 77t(b), the legislative history of a proposed amendment to that statute, and the recent decision of the Supreme Court on a purportedly analogous issue. *See United States v. Giordano*, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974). Defendants have not cited any statutory language in 18 U.S.C. §§ 371, 1341 or 1505, which preludes the exercise of prosecutorial discretion on the part of the United States Attorney, nor have they cited any authority for the proposition that a properly constituted grand jury may not return an indictment for violation of those statutory provisions absent approval from the Attorney General of the United States. Defendants in effect argue that since the discretion to prosecute violations of the securities fraud laws is vested solely in the Attorney General, the prosecution of other interrelated offenses or offenses predicated on the same fraudulent scheme must

likewise be vested solely in the Attorney General. This contention is wholly without merit; for such an argument would virtually emasculate the prosecution of federal offenses when any regulatory agency, such as the S.E.C., F.T.C. or H.E.W. arguably has been assigned primary supervisory, investigatory, and civil enforcement authority over the scheme in issue. Defendants' arguments must likewise fail with respect to those counts of the subject indictment predicated solely on violation of the securities laws.[3]

*United States v. Giordano, supra,* while instructive, does not support defendants' position. In that case, the Court was presented with mandatory terms of the portions of the Omnibus Crime Control and Safe Streets Act of 1968 dealing with issuance of wiretap authorizations by the Attorney General. 18 U.S.C. § 2516(1). The Court concluded that the plain language of the act, as well as its legislative history, precluded issuance of wiretap orders on the initiative of investigative officers, noting that under the statute, "[t]he mature judgment of a *particular, responsible Department of Justice official* is interposed as a critical precondition to any judicial error." *Id.* 416 U.S. at 515–16, 94 S.Ct. at 1827. (emphasis added)[4] In reaching this conclusion, the Court rejected the Government's argument that the statute in question, by merely vesting a duty in the Attorney General, was not intended to preclude delegation of this duty to other responsible officers under the provisions of 28 U.S.C. § 510:

*As a general proposition, the argument is unexceptionable.* But here the matter of delegation is expressly ad-

---

**2.** None of the courts previously reviewing this issue entered a formal opinion; therefore, it is impossible to determine whether these courts concluded that the actions filed were without merit on conceptual, procedural, or substantive grounds.

**3.** On review of the order entered in this action on June 20, 1975, this court notes that it erroneously included count VI of the indictment among the securities fraud counts. *See United*

*States v. Tallant, supra* at p. 884 n. 1; *id.* pp. 886–888. This is largely a clerical error which did not affect the substantive outcome of that order, and which may be corrected at any time under Rule 36, Fed.R.Crim.P.

**4.** Under the express terms of § 2516(1), the particular, responsible official, is "[t]he Attorney General, or any Assistant Attorney General *specially designated* by the Attorney General . . . ." *Id.* (emphasis added).

dressed by § 2516 and the power of the Attorney General in this respect is specifically limited to delegating his authority to "any Assistant Attorney General specially designated by the Attorney General." Despite § 510, Congress does not always contemplate that the duties assigned to the Attorney General may be freely delegated. *Id.* 416 U.S. at 514, 94 S.Ct. at 1826 (emphasis added). As another example of a statute circumscribing the general provisions of § 510, the Court cited 18 U.S.C. § 245(a)(1), which provides for certification by the Attorney General of civil rights prosecutions, "which function of certification may not be delegated." *Id.* There is no similar provision with respect to 15 U.S.C. § 77t(b).

A fair reading of the statutory provision in issue indicates that pursuant to the express terms of the statute, it was designed to affect the power of the S.E.C. and not designed to limit the normal power of delegation entrusted to the Attorney General.[5] In fact, the legislative history cited by defendants herein, far from supporting their theory, actually supports the proposition that Congress was simply concerned with the proper boundaries that should be imposed upon the authority of the S.E.C., and did not intend to circumscribe the delegatory discretion of the Attorney General under 28 U.S.C. § 510. The statute itself is couched in permissive rather than mandatory terms; and, unlike the wiretap authorization statute construed in *Giordano*, and, unlike 18 U.S.C. § 245(a)(1), the statute does not contain an express or implicit limitation on the authority of the Attorney General to "delegate" or to "designate" an appropriate prosecutorial official. As a result, this court agrees with the comments of Solicitor General Bork, contained in his brief on the matter submitted to the Supreme Court in *Tallant v. Moye, supra*:

[T]he statute, upon which petitioners rely, does not state that stock fraud cases may be brought only when personally authorized by the Attorney General, but rather that the Securities and Exchange Commission may refer cases to him for prosecution. The evident purpose of this section was to insure that, in cases where the Commission determined that criminal prosecutions were warranted but the United States Attorney declined to prosecute, the Commission would be entitled to have its evidence reviewed by the Attorney General or his delegate.

Moreover, under any construction 15 U.S.C. § 77t(b) does not require personal action by the Attorney General, for the Attorney General has power to delegate "any function." 28 U.S.C. § 510.

Under *Giordano*, and in light of the arguments of the parties and the plain language of the statute, this court has concluded that irrespective of whether the matter has been authoritatively foreclosed by the aforementioned decisions of the courts that have considered defendants' applications for extraordinary relief, the United States Attorney, and his authorized assistant, did not exceed their authority in presenting this matter to the grand jury and in acting upon the resulting indictment. *Cf. United States v. Parrott*, 248 F.Supp. 196, 199 (D.D.C. 1965) (recommendation to prosecute referred by S.E.C. to U. S. Attorney, but indictment dismissed on speedy trial grounds). *See also United States v. Parrott*, 425 F.2d 972 (2d Cir.), *cert. denied*, 400 U.S. 824, 91 S.Ct. 47, 27 L.Ed.2d 53 (1970) (affirming conviction on indictment returned in New York). Defendants arguments to the contrary are without merit.

Accordingly, for the reasons hereinabove expressed, defendants' motion for reconsideration is hereby denied.

---

**5.** The statute in question provides in relevant part as follows: "The Commission may transmit such evidence as may be available concerning such acts or practices to the Attorney General who may, in his discretion, institute the necessary criminal proceedings under this subchapter." 15 U.S.C. § 77t(b).

In sum, this court has denied defendants' motion. for severance, concluding that a joint trial of the offenses alleged in the indictment and the parties herein would not be inherently prejudicial or otherwise so prejudicial as to be improper under Rule 8(a) or 8(b), thereby warranting severance under Rule 14. The defendants' motion for reconsideration has also been denied.

It is so ordered.